GEORGE F. TUTTLE, surviving executor, &c., of Charles S. Macknet, deceased,

*v.*

CAROLINE A. WOOLWORTH et al.

[Filed November 13th, 1901.]

1. Where a will directs that, in the event of a certain devisee's death, without surviving issue, testator's house and lot shall be sold and the proceeds divided among his heirs, the executor, as trustee, is not entitled to direction of the court as to the disposition of the proceeds of sale until the sale has been made and the proceeds are on hand.

2. A testator bequeathed personalty to his executors in trust to collect the interest and pay the expenses of a house given to the use of his wife, and, on her decease or marriage, to his daughter, and to pay the balance of the interest to his wife during her natural life, and, after her death, to set off the said personalty to his daughter or her heirs. If the said

Tuttle *v.* Woolworth.

daughter should die without issue surviving, or children of such issue, then the personalty was to revert to testator's estate, to be distributed as though he had died intestate. Subsequent to testator's death, and prior to the death of her mother, the daughter died, unmarried and without issue, having devised her interest under the will to her mother.—*Held,* that the persons who were to take as "heirs" of the testator, under the limitation over on the daughter's death without issue, were those who answered the description of testator's heirs at the time of his death, and the legatees of the mother would take her interest derived through the daughter's will.

Heard on bill and answers.

*Mr. Joseph N. Tuttle,* for the complainant.

*Mr. Henry H. Dawson,* and *Mr. Dorsett* (of the New York bar), for the defendants Woolworth and Dorsett.

*Mr. Charles G. Titsworth,* for the defendants Mary T. Taylor et al.

Emery, V. C.

Under the will of Charles S. Macknet, who died in 1872, his executors held in trust for testator's widow, during her life, a house and lot, No. 38 East Kinney street, Newark, and certain specified bonds and stocks, amounting, at par value, to about ten thousand dollars. The widow died on February 27th, 1900, and questions are now raised as to the parties entitled to this real and personal estate after her death. As to the real estate, the *third* item of the will devises and bequeaths this house and lot to his executors in trust, substantially as follows—first, for the use of his wife during her natural life, or her widowhood, and, after his wife's decease or marriage, to his daughter Hattie for life, and, at her death, to convey to her children, or, if desirable for their interest, to sell and divide the proceeds of sale. This item of the will then directs:

"But if the said Hattie shall die without issue her surviving, then I direct my executors to sell the said house and lot and distribute the proceeds thereof among my heirs, according to the laws of the State of New Jersey."

The daughter Hattie died, unmarried and without issue, in 1887, and previous to the death of her mother. By her will she devised all her estate, derived under her father's will, to her mother. The mother, by her will, devised and bequeathed her residuary estate to her two nieces, the defendants Mrs. Taylor and Mrs. Dusenberry.

The heirs-at-law of the testator, at the time of his death, were his son, Theodore, and his daughters, Caroline and Hattie. Caroline (now Mrs. Woolworth) is one of the defendants, but Theodore died during the lifetime of his mother, and his daughter, Eliza (now Mrs. Dorsett), one of the defendants, is the sole survivor of his stock. Mrs. Woolworth and Mrs. Dorsett claim that the "heirs" of the testator who are to take the proceeds of the sale of the lands directed to be made at the widow's death are the heirs of the testator who were living at the time of the widow's death, and that, as the two heirs living at this period, they are entitled to the whole proceeds of sale. The administrator *cum testamento annexo* of the widow, on behalf of her residuary devisees and legatees, claims, on the other hand, that the heirs of the testator are to be determined at the death of the testator, and that Hattie was entitled, under the will, to one-third, as one of these heirs, and her assigns are entitled to one-third of the proceeds of the sale, when made. As the surviving executor has not yet sold the house and lot, it would be premature to decide upon the disposition of the proceeds of sale, and the executor is not entitled to the direction of the court upon this disposition until the proceeds of sale are on hand ready to distribute, and the persons then entitled to, or claiming, the fund are in court.

The personal estate involved is ready for distribution, and as to this the executor is entitled to directions. As to the personal estate the question arises under the *fifth* item of the will, in which the primary bequests and the limitation over are made in a somewhat different form. This fifth item bequeaths to the executors certain bonds and stocks, specified (about ten thousand dollars par value), in trust—first, to collect the interests, &c., and therefrom pay expenses of maintenances, taxes, &c., of the house of which the use was given to his wife and daughter Hattie (being the house mentioned in the third item), and second, to

Tuttle v. Woolworth.

pay the balance of the interest, &c., to his wife during her natural life,

"and after her death to set off the said bonds and stocks to my daughter Hattie, or her heirs. If the said Hattie shall die without issue her surviving, or children of such issue, then said bonds and stocks shall revert to my estate and be distributed among my heirs, in the manner provided by the laws of New Jersey respecting intestate estates."

As to these stocks and bonds the now living heirs of the testator, Mrs. Woolworth and Mrs. Dorsett, claim the entire amount, upon the same grounds as their claim to the entire proceeds of sale under the *third* item is based.

It is claimed, on the other hand, by the assignees of Hattie's interest, that the daughter Hattie, under this bequest, upon the death of the testator, became entitled to an absolute vested estate in the fund, subject only to the life interest of her mother, and that the clause directing payment over on her death without issue surviving, referred only to her death in the lifetime of the testator. Having survived the testator, it is claimed that she was entitled to the absolute estate, and that the bequest to testator's heirs, being substitutionary only, cannot take effect. It is, moreover, insisted that this construction of the character of the bequest was settled by a decree made on a bill filed by the executors during Hattie's lifetime, and to which she was a party. *Macknet* v. *Macknet's Heirs, 9 C. E. Gr. 277 (Chancellor Runyon, 1873).* In this case the question was as to the effect of the widow's refusal to accept the provisions of the will, in lieu of dower, on the different bequests and devises of the will. But the question now raised as to the nature and effect of the bequest made on the death of Hattie without issue, during the lifetime of the mother, was not directly involved or expressly considered in the case, neither could it have been conclusively determined in advance and in the absence of the parties or claimants necessary to determine the question. *Ashhurst* v. *Lippincott, 11 Dick. Ch. Rep. 840, 842 (Errors and Appeals, 1898).* Nor, on examining the decree made in reference to her interest in the bonds and stocks, does it appear to determine the point now involved. By the decree the executors were not directed to pay over the

bonds and stocks to Hattie, as if, on the failure of the wife's interest, by her refusal to accept the legacy, the principal had become payable to Hattie at once, but they were directed to hold and accumulate the balance of the income of the fund, after paying expenses on the house, in trust for Hattie, and no express direction was made as to paying her any portion of the principal. The widow, subsequent to this decree, accepted the provisions of the will (*Macknet* v. *Macknet, 2 Stew. Eq. 54* (*1878*), and the executors, having therefore held the fund, as expressly directed by the will, until after the death of the widow, the question as to the distribution of the fund after her death now comes directly before the court. All the claimants to the fund have now, for the first time, their day in court as to its disposition, and are entitled to have the question considered as *res nova,* and not *res adjudicata.* The claim that Hattie, on surviving the testator, had a vested interest in the fund, indefeasible by her subsequent death without issue, is based on the contention that the direction that "if the said Hattie shall die without issue her surviving, or children of such issue," referred only to her death in the lifetime of the testator, and not to her death before the period of payment or transfer—the death of her mother. This construction cannot be adopted. The words "die without issue her surviving," taken in the natural and ordinary sense, refer to death at any time without issue surviving, either prior to the testator's death or subsequent. Unless there is something in the will which would indicate that death before the testator was intended, the natural scope of the words cannot be restricted to death before that period. In all of the New Jersey cases to which I have been referred by counsel on this point there have been expressions or provisions indicating that the time of death without issue surviving was restricted either to a death before testator or some other special time. The leading cases, *Pennington* v. *Van Houten, 4 Halst. Ch. 272, 745; Baldwin* v. *Taylor, 10 Stew. Eq. 78; affirmed, 11 Stew. Eq. 637,* are instances where, by reason of the context and the general provisions of the will, the death referred to was so restricted. In the present will, not only are these special features absent, but the other directions of the will, in reference to Hattie's interest, show that no such restriction was intended, and that

death without issue, either after or before the testator, and at any time before the payment over of the bonds, was intended. In the first place, the bequest of the fund is to the executors, and the transfer to Hattie, which is primarily to take place, is directed to be made after the death of the widow, and the testator, as his will shows, contemplated that his widow would survive him. In the next place, the second disposition of the fund, which is to be made if the primary disposition to Hattie fails, is made by the direction that, *after* the death of the widow, it is to be set off "to Hattie or her heirs." This gift to the heirs of Hattie is clearly a substitutionary gift, in case the primary gift to Hattie fails, and as to such substitutional bequests, made after a life interest, the general rule is that, in the absence of an intention shown to the contrary, they take effect whether the primary legatee dies in the lifetime of the testator or of the tenant for life. *Theob. Wills (4th ed.)* 541.

This is, in my judgment, the plain and natural construction of the effect of this bequest to Hattie or her heirs of the principal of the fund after the death of her mother. If this be the true construction of this bequest to the heirs of Hattie, which is clearly substitutionary, there would seem to be no basis for the claim that the bequest made by the subsequent independent clause, "on the death of Hattie without issue her surviving," is a second substitutionary clause, following a primary gift to both Hattie and her heirs, in which the period for the substitution to take effect was limited to the death of the testator. The bequest on failure of issue was not a substitution, but was rather a limitation over, which took effect on the death of Hattie without issue surviving. Such limitation over was valid, and took effect whether Hattie's interest was vested on testator's death or contingent on her surviving her mother, for, if vested, it was subject to be divested by a valid limitation over on a definite failure of issue. *Rowe* v. *White*, 1 *C. E. Gr.* 411 (*Chancellor Green, 1863*); *Neilson* v. *Bishop*, 18 *Stew. Eq.* 473, 476 (*Vice-Chancellor Van Fleet, 1889*). A conclusion that Hattie's estate was vested on her father's death does not therefore determine the question now at issue, which relates to the persons taking under the limitation over. Hattie not being, in my judgment, entitled, as surviving her father, to

the absolute, indefeasible interest in the fund, the real question
in the case is whether, as one of the heirs of the testator, she,
or those claiming under her, are entitled to one-third of the fund,
or whether the two heirs of the testator who were living at Mrs.
Macknet's death, are together entitled to the whole fund. The
word "heirs" in the direction in this limitation over, to distribute
personal estate among testator's "heirs," means next of kin, and
this would be the construction even without the additional direc-
tion that the manner of distribution is to be that provided by
the laws respecting intestates' estates. *Welsh* v. *Crater, 5 Stew.
Eq. 177; affirmed on appeal, 6 Stew. Eq. 362 (1880)*; *Reen* v.
*Wagner, 6 Dick. Ch. Rep. 1 (Chancellor McGill, 1893)*; *Leavitt*
v. *Dunn, 27 Vr. 309, 311 (Errors and Appeals, 1893)*. The be-
quest to "heirs" of the testator is a gift of the kind designated
as a gift to a class, and the question to be solved is at what
period of time is the class of testator's "heirs" fixed by the will—
at the testator's death or at the time of his widow's death. The
words "heirs or next of kin" are technical legal words, and in
their legal sense bear within themselves an indication as to the
time intended for fixing the class, which cannot be overlooked.
The legal relation or *status* of "heir" or "next of kin" arises
only upon the death of the ancestor, and it arises immediately.
In a legal sense, therefore, "heirs" implies a reference to the time
of the ancestor's death, and if a testator makes a devise or gift
to his "heirs" or "next of kin," those standing in that relation
at the time of his death would seem to be the persons intended,
unless there is something in the will itself to show that the tes-
tator had another period in his mind, and that the legal sense of
the words is to be restricted by indications that some other time
is fixed. If the gift to testator's "heirs" or "next of kin" follows
a previous gift to a person, not one of the heirs or next of kin of
the testator, there could generally be no question that the class
was fixed at testator's death. *Welsh* v. *Crater, supra; Hayes* v.
*King, 10 Stew. Eq. 2 (Chancellor Runyon, 1883)*; *2 Wms. Ex.
*986 (R. & T. ed. 402, 403)*. A supposed difficulty arises when
the previous gift is to a person who is one of the heirs or the sole
heir or next of kin of the testator, and the question is whether this
next of kin should not be excluded from the class, because it could

not, it is urged, be considered that the testator intended giving this heir or next of kin anything in addition to the expressed gift, which had lapsed or failed. This was the view adopted in some of the earlier English cases, and it is one of the considerations which controlled the court of appeals of New York in confining the class "next of kin" to those living at the time of distribution. *Delaney* v. *McCormack, 88 N. Y. 174, 183 (1882)*. But the later English cases have held that this objection against allowing the representatives of the previous legatee, whose estate has terminated, to take under him as one of the testator's next of kin, is not sufficient to control the legal and fixed meaning of the words "heirs" or "next of kin," as necessarily referring to the testator's death, in the absence of directions in the will fixing some other time. *2 Jarm. Wills* \*129 *(R. & T. ed. 670–680)*, collecting all cases; *Theob. Wills (4th ed.) 286, 287; 2 Wms. Ex.* \*986, 987 *(R. & T. ed. 402)*; *Urquhart* v. *Urquhart, 13 Sim. 613, 629 (1843)*, approved in *Welsh* v. *Crater, 5 Stew. Eq. 181*. The objection from incongruity supposed to arise against holding that the previous tenant is entitled to any interest in an estate as next of kin, after the estate specially given to him by the will has terminated, is, as it seems to me, met and answered by the consideration that when the testator limits an estate to one of his next of kin and his children or issue, and then directs that, on failure of this limitation, his heirs or next of kin shall take according to law, he discloses clearly that; if the special and immediate limitation fail, as it may, then he had no intentions or wishes to change the disposition which the law itself would have made for him in regard to this part of his estate, and that, on the failure of his special purpose, he desires that he should be considered as making no provisions of his own about the disposition of his estate, but as expressly leaving that disposition to be made by the laws as if he had died intestate. When there is the further express direction in the will, as there is in this case, that the estate shall be distributed among testator's heirs (or next of kin), in the manner provided by law respecting intestates' estates, the conclusion seems unavoidable that the testator, as to the estate limited over, intended the same persons to receive the estate as would have received it at his death, by law;

had he died intestate as to its future disposition after the failure of the particular estate. If this be the correct view, the previous gift to one of the next of kin cannot, of itself, be sufficient to exclude him from the portion which, as next of kin, would have come to him by law, or show that the testator intended to restrict the operation of the laws relating to distribution of intestates' estates, by referring them to a time subsequent to his death. The precise question now involved does not seem to have been decided in this state, and, in my opinion, the principle of the later English cases, in reference to the time of fixing the class, is to be adopted in this case, as most effectually carrying out the intention of the testator shown by the natural and legal sense of the words of the will, in the absence of any indication that they are not to be used in this sense.

Another argument strenuously urged for the restriction of the class of heirs to those of testator's heirs living at the widow's death, or time of distribution, is that the gift over to the heirs was contingent and not vested, and that, until the widow's death, there was a contingency as to the heirs who were to take, and therefore only the heirs who were then living could take under the limitation. The opinions of the New York court of appeals in several cases are cited as supporting this claim. *Delaney* v. *McCormack, supra; Matter of Crane, 164 N. Y. 71, 74 (1900).* But, in my judgment, the assumption that there is, in such cases, a contingency as to the persons who are to take, begs the very question to be solved. The contingency, as fixed in express words by the will in this case, was a contingency dependent only upon an event, viz., the death of Hattie without issue. The question as to the persons to whom the limitation over of the principal was made by the testator, on the happening of that contingent event, and whether there was any contingency or uncertainty as to these persons, or any of them, depends upon the manner in which the testator had described or designated the persons who are to take upon the contingency happening. If this designation of the persons to take under the limitation is made *nominatim,* then there is no contingency as to the persons to take, and the contingency being only as to the event or time of enjoyment, the interest under the limitation over is vested from the testator's

Tuttle v. Woolworth.

death.  *Van Dyke* v. *Vanderpool, 1 McCart. 198, 206 (Chancellor Green, 1862).*  The precise question now is whether the persons to take under the limitation, being called the "heirs" or "next of kin" of the testator, are not necessarily, in the absence of a contrary intention appearing, the persons who, at the testator's death, answer the description, and whether they are not persons designated as effectually as if they were all specially named.  If therefore "heirs" refers to heirs at the time of the testator's death, there is no contingency as to the persons to take, and the contingency of the gift, upon an event which might not happen, does not affect the description of the persons who were to take on the happening of the contingency.  This was the view of Vice-Chancellor Wigram, in *Bird* v. *Luckie, 8 Hare 301 (1850).*  In this case there was a gift or direction to distribute to the next of kin, in case of the death of the person entitled for life (a grandson) without issue.  Vice-Chancellor Wigram says on this point (at *p. 304*) : "The next of kin must be held to be the person or persons answering the description of the testator's next of kin at the time of the testator's death.  So much is clear.  The mere circumstance that the gift to the next of kin was not immediate, but was contingent upon a future event, which might or might not happen, is insufficient to render the description applicable only to such person or persons who should happen to form the class at the time of the occurrence of the event, the context having nothing to make it so applicable."  The contingency as to the gift taking effect, therefore, does not, in the present case, affect the question of who compose the class to take, and does not, of itself, afford a reason for restricting its application so as to exclude any person who was an heir of the testator at the time of his death.

I conclude that the persons who were to take this personal estate as "heirs" of the testator were those who answered the description of his next of kin at his death, being his son, Theodore, and his daughters, Caroline and Hattie, and that the fund is to be distributed equally in three shares among these persons, or those who have succeeded to their respective rights in personal estate.