DAVID B. OGDEN et al., substituted trustee under the will of James Gore King, deceased,

*v.*

JAMES L. McLANE et al.

[Decided August 10th, 1907.]

1. A testator gave real and personal estate to trustees in trust to apply the income to a daughter for life and on her death to transfer the *corpus* to persons named under conditions set forth.—*Held*, that the trustees acquired the legal title to the estate, requiring them at the proper time to pay over the personalty to the final takers and to convey the real estate to them.

2. The court of chancery will not instruct testamentary trustees as to their duties as to the trust estate in their hands until the time for payment and transfer of the same has arrived, when the parties to be affected by the action of the trustees are entitled to be heard.

3. A testator gave real and personal estate in trust to apply the income to a daughter for life and on her death to transfer the *corpus* to persons named, subject to the exercise by the daughter of the power to appoint the entire *corpus* among a class of relatives designated in the will, or to appoint the entire *corpus* to her surviving husband, or to appoint a life estate either in the whole income or any part thereof to the surviving husband.—*Held*, that the powers vested in the daughter were independent of each other, and she might exercise the power of providing for the sup-. port of her husband out of the income of the trust estate, without undertaking by the exercise of any other power to interfere with the final disposition of the *corpus* which the testator made, or she might appoint the *corpus* absolutely to the relatives mentioned in the will, without mentioning her husband's name, or giving him any interest in either income or principal, or she might appoint the income to her husband and the *corpus* to the relatives of the class named.

4. A power vested in a beneficiary of the income of a testamentary trust estate for life to appoint either the *corpus* of the estate to her surviving husband absolutely, or to create by appointment a life estate in him in the income of the estate, does not violate the rule against perpetuities, though the surviving husband may have been born after the death of the testator.

5. Where the power vested in a beneficiary of the income of a testamentary trust estate for life to appoint a life estate in the income thereof to her surviving husband is valid when taken by itself, the power is not rendered invalid by any invalidity in the attempted exercise of the power to appoint the disposition of the *corpus* of the estate after the husband's death.

6. A testator gave real and personal estate to trustees to apply the income to a daughter for life and on her death to transfer the *corpus* to persons named, subject to the exercise by the daughter of the power to appoint the *corpus* among a class of relatives, or the power to appoint the entire *corpus* to her surviving husband, or the power to appoint "a life estate either in the whole income or any part thereof" to the surviving husband.—*Held,* that the daughter had no power to appoint the *corpus* of the estate for the life of her surviving husband, but could appoint to her husband an absolute estate in the *corpus*, so that on her death the trustees would be obliged forthwith to transfer to the surviving husband the *corpus* of the trust estate.

7. The daughter executed a will "intending thereby to execute the power" in the will of the testator, and gave to her husband her estate for life, with the remainder over to her children.—*Held,* that the daughter gave to her husband only the income of the trust estate for his life, and the trustees under the will of the testator could retain the estate in their hands, and collect the income thereof, and pay it over to the husband for life.

On bill and answers.

*Mr. James B. Vredenburgh,* for the complainants.

*Mr. Frank G. Turner,* for the defendants.

STEVENSON, V. C.

This is a friendly suit brought by the complainants as trustees of real and personal property, alleging that doubts have arisen as to their duty, and praying for the instruction of this court in the premises.

My conclusions are as follows:

1. The complainants, as trustees at the present time, plainly hold legal title to the estate in their hands. The will of James

Gore King, deceased, which created the trust, makes a gift consisting of both a devise of real estate and a bequest of personal estate to the trustees to whose title the complainants have succeeded. The trustees are to apply the income of the entire trust estate to the beneficiary, a daughter of the testator, Fanny King McLane (now deceased), during her lifetime.

Upon the death of this beneficiary the trustees are charged with the duty of *paying over* and *transferring* the *corpus* of the estate in their hands to certain persons named or described in the will, under certain conditions therein set forth or provided for. So far as the trust estate consists of personal property the duty of the trustees either is now or at some future time will be to pay over the same to the final takers. A corresponding duty now rests or will rest upon the trustees to make a conveyance of the real estate vested in them in trust to these takers.

The only questions now before this court upon this bill, which the court can answer, are—

*First.* Whether the trustees are now under the duty of paying over and transferring the trust estate, or are to continue to hold the same.

*Second.* If the trustees are to continue to hold the trust estate which involves the collection of the income thereof, to whom is such income payable?

*Third.* If the time to pay over and transfer has been reached, who are the persons to whom such transfer and payment should be made? •

If the first question is answered in favor of the continuance of the trust, then it follows that the third question will not be considered. This court will not instruct trustees in regard to their duty with respect to the payment ·or transfer of the trust estate in their hands until the time for such payment and transfer has arrived. When the time to act arrives the parties who then will be affected by the action of the trustees are entitled to be heard; they are the parties who argue the question, the determination of which directly affects their interest. *Griggs* v. *Veghte, 47 N. J. Eq. (2 Dick.) 180; Traphagen* v. *Levey, 45 N. J. Eq. (18 Stew.) 448, 453; Tuttle* v. *Woolworth, 62 N. J. Eq. (17 Dick.)*

11

*532; Norris* v. *Beardsley, 62 Atl. Rep. 425; Conant* v. *Bassett, 52 N. J. Eq. (7 Dick.) 12.*

2. I think it is clear that the will vests three distinct powers of appointment in the testator's daughter, Fanny King McLane, and that these powers are absolutely independent of each other, so that the invalidity of one could not affect anyone of the others.

These different powers of appointment appear to be as follows:

(1) The power to appoint the entire *corpus* of the estate among a class of relatives named in the will, or a sub-class of such relatives to be selected by the donee of the power, Mrs. McLane.

(2) The power to appoint the entire *corpus* of the estate to any surviving husband of the donee of the power absolutely.

It is manifest that these two powers are alternatives; that one only of them could be exercised. They are, however, plainly independent of each other although the exercise of one excludes the exercise of the other.

(3) The power to appoint "a life estate either in the whole income or any part thereof" to a surviving husband. This power and the one last enumerated are also alternatives, not only because of their essential nature, but because of the express language of the will. The donee of the power is authorized to give to her surviving husband *either* a life estate in the income *or* the whole of the capital.

This last-mentioned power—the power to make an appointment of income for the benefit of a surviving husband—may be subdivided into two distinct alternative powers, viz., (*a*) the power to appoint a life estate in the whole income, and (*b*) the power to appoint a life estate in any part of the income. The exercise of this power in either form or to either extent imposes a modification of the first power of appointment above mentioned, and in like manner imposes a modification upon the express gift of the remainder contained in the testator's will.

The slightest examination of the various powers vested in Mrs. McLane will, I think, make it evident that each of these powers as above enumerated is entirely independent of the others. The testator disposes of the entire remainder after the death of

his daughter, Mrs. McLane, but subjects such disposition to the possible exercise of either of these three distinct powers, and to the possible exercise of two of these powers. Whether one of these powers, or two of them above mentioned, or none of them, shall be exercised, is left absolutely within Mrs. McLane's discretion. She may exercise the power of providing for the support of her surviving husband out of the income of the trust estate without undertaking by the exercise of another power to interfere with the final disposition of the *corpus* of the estate which the testator has clearly made. On the other hand, she may appoint the *corpus* of the estate absolutely to her children and other relatives mentioned in the will, without mentioning her husband's name or giving him any interest in either income or principal. She may also appoint income to her husband and *corpus* to the relatives of the class named. Finally, she may make no appointment either in respect of income or *corpus* and thus leave the entire trust estate to vest upon her death in the remaindermen named in her father's will.

3. The power vested in Mrs. McLane, the beneficiary of the income for her life, to appoint either the *corpus* of the estate to her husband absolutely or create by appointment a life estate in him in the income of the trust estate, is not invalid on account of the rule against perpetuities. *Loring* v. *Blake, 98 Mass. 253; Lawrence Estate (appeal of Appleton), 136 Pa. St. 354; 1 Jarm. Wills (R. & T. ed.) 547, 551.* The authorities seem to establish the proposition beyond dispute that the mere fact that the surviving husband may have been born after the decease of the testator does not affect the validity of the testamentary disposition. The reason is that, upon the death of the life tenant or beneficiary for life, by her appointment the entire estate becomes vested, and there remains no possible uncertainty as to who are the takers. There are parties *in esse* who are capable of making absolute transfers. In this case Mrs. McLane, the daughter of the testator, survived him over fifty years. It is possible that she might have married a young man a few weeks before her death and then have appointed to him a life estate which might endure for half a century longer. Nevertheless in

such case, upon Mrs. McLane's death, the whole estate in the hands of the trustees, which is the subject of disposition, would immediately vest in definite persons. The principle seems to be that the carving up of the estate in a case like this into tenancies for life and for years, &c., does not render the disposition obnoxious to the perpetuity rule, provided there is no uncertainty as to the vesting of any part of the estate so that definite persons *in esse* can alienate their respective ascertained definite shares of the estate and unite in alienating the whole.

4. The power to appoint a life estate in the income to the surviving husband being valid, taken by itself, is not rendered invalid by any invalidity or defect which may be found to characterize the attempted exercise of the power to appoint the disposition of the *corpus* of the estate after the husband's death. This result follows from the absolute independence of the power to appoint the entire *corpus* of the estate among the possible takers described in the will on the one hand, and the power to impose by appointment of the *corpus* of the estate or the income thereof or part of the income thereof for the benefit of the surviving husband on the other. If the attempted appointment of the *corpus* of the estate which Mrs. McLane made in her will is invalid, it follows that the *corpus* will go under the express provision of the testator's will precisely as if Mrs. McLane had not attempted to make any appointment of the *corpus*. But such result cannot affect the appointment of income.

5. It may be noted in passing that the powers of appointment vested in Mrs. McLane are described in the will as the power "to give the said capital or funds so held in trust * * * by will or testamentary appointment" to the class of persons described or any of them, and the power "to give" to her husband, manifestly by will or testamentary appointment, either a life estate in the income or the *corpus* absolutely. The donee of this power, Mrs. McLane, undertook to exercise the same by testamentary provisions which apply without discrimination to her own estate and the estate of the testator which she had power to dispose of by appointment. The opening paragraph of Mrs. McLane's will is as follows:

"I, Fanny King McLane, of Baltimore City; State of Maryland, do make this my last will and testament in manner following, intending hereby to execute the power given to me in the last will of my father, the late James Gore King, to dispose of the share of his estate now held in trust for me under his will, as well as to dispose of all my other property and estate."

The will contains no further reference to this trust estate, but proceeds to make a disposition of property as if the same were vested in the testatrix absolutely. After providing for the payment of debts and funeral expenses and a few small pecuniary legacies, the will provides as follows:

"All the rest, residue and remainder of my property, real, personal or mixed, I give, devise and bequeath to my husband, James L. McLane, for the term of his natural life, and from and after the death of my said husband I direct that all my said property be divided into four equal parts or shares, and I give, devise and bequeath to each of my three children, Allan, Fanny King and Fredericka Gore, one of said part or shares, the child or children of any of my said children dying before me to receive the part or share to which its or their parent would have been entitled if living at the time of my death; and the remaining fourth part or share I give, devise and bequeath to my son, Allan McLane, and to my daughter, Fanny King McLane, and to the survivor of them, in trust and confidence nevertheless, to hold, invest and manage the same for the use and benefit of my two grandchildren, Ethel McLane Lee and Katharine Lawrence Lee, children of my deceased daughter, Katharine Milligan McLane, until they shall respectively reach the age of twenty-one years, paying out and expending meanwhile the net income arising therefrom for their support and education, as in the judgment of my said trustees may seem proper; and in the event of the death of either of my said two grandchildren before reaching the age of twenty-one years, I direct my said trustees to hold and invest the whole of said fourth part or share of my estate and to manage the same for the use and benefit of the survivor of said two grandchildren upon the same trusts as above set forth, and in the event of both my said grandchildren dying before reaching the age of twenty-one years, then said trust shall cease, and I give, devise and bequeath said fourth part of my estate to my three children, Allan, Fanny King and Fredericka Gore, and their descendants then living, share and share alike, *per stirpes* and not *per capita.*"

Mrs. McLane undertook to make an appointive distribution of the trust estate, and a testamentary disposition of her own estate practically as a unit, and by the employment of phraseology applicable at the same time to these two very different subject-matters. Such a method of making a will of one's own estate

and appointing a disposition of someone else's estate *en bloc* may be dangerous and lead to difficulties, but it is, nevertheless, permissible. *Inglis* v. *McCook,* 68 *N. J. Eq.* (*2 Robb.*) *37, 38.* The language of Mrs. McLane's will must be construed distributively, having in view the two radically different ways in which many of the provisions of the will must necessarily operate. Mrs. McLane evidently did not intend that her surviving husband should receive any portion of her own estate, or any portion of the trust estate absolutely. She had power to give her husband the whole or a portion of her own estate, absolutely, if she saw fit to do so. She also had the power, under the will of her father, to appoint to her husband the whole of the trust estate if she saw fit to do so. What she desired to do and intended to do was to give her surviving husband the beneficial enjoyment, for his lifetime, of all the property which she controlled, whether such property was her own estate or consisted of this trust estate which was subjected to her power of appointment. In carrying out this intention she naturally employed language which would be sufficient to vest in her surviving husband a legal life estate in all her own real and personal property. She had no power by appointment to vest in her surviving husband a life estate in the *corpus* of the trust estate. In other words, she could not appoint to her husband a legal life estate in the estate, real or personal, which the trustees held. She did have the power to appoint to her husband an absolute estate in the *corpus* so that immediately upon her decease the trustees, in execution of their trust under the will of James Gore King, deceased, would be obliged forthwith to pay over and transfer to the surviving husband the entire trust estate. But I think it is plain that Mrs. McLane had no power to appoint the *corpus* of the estate for life. If she did not see fit to dispose of the *corpus* by appointment to her surviving husband, her only power to appoint for his benefit was the power to appoint "a life estate in the whole income or any part thereof." As we shall see later; there is great significance in the provision for an appointment of a life estate for the husband's benefit in part of the income.

In order to construe the phrase "life estate in the income," it is necessary to consider the exact situation contemplated by the

testator when he employed this phrase. The testator is dealing with the disposition of an estate legally vested in trustees, the income of which these trustees are collecting and disbursing in execution of their trust. This was the situation which would necessarily exist not only up to the time of Mrs. McLane's death, but, except in respect to the disbursement of the income, after her death until the persons entitled to receive the estate should have been ascertained, and the estate should have been paid over and transferred by the trustees to such persons. Therefore when Mrs. McLane is given the power to appoint "a life estate in the income" of this trust estate, it seems to me that it is quite plain that the testator, the donor of the power, is contemplating the trust as continuing in the event of the exercise of this power of appointment in order that there may be an income which the appointee is to enjoy for life. This is not a case where the income of property is given to A and the *corpus* to B while the property exists in its entirety as a unit in the donor's hands, or as an asset of his estate. A severance between income and principal has been effected by the trust. The income exists as a distinct property independently of the *corpus*. That the testator was contemplating the income of the trust estate as entirely distinct from the principal is indicated, I think, by the very significant phraseology which he saw fit to employ. He does not say that Mrs. McLane might give her husband either the whole of the capital absolutely or the whole or a portion of the capital for life. He provides that she might give her husband either one of two things, viz., (1) a life estate in the whole income or any part thereof, or (2) the whole of the capital.

But still more significant is the fact that the donee is empowered to appoint a life estate in a part of the income, while no express provision is made for the application of the remainder of the income during the husband's lifetime. If Mrs. McLane had undertaken to exercise this power and had appointed to her husband, for life, one-half of the income of the trust estate, it is difficult to see how any good argument could be presented against the continuance of the trust estate in order that the income might be collected and divided into two portions, one of which only would go to the surviving husband. It is unnecessary to

inquire where, in case of such appointment of part of the income, the remainder of the income would have gone.

If we construe the provision of Mr. King's will in the light of the circumstances which surrounded him when he made it, and in the light of the conditions which he must have contemplated as existing when the power of appointment which he vested in his daughter, Mrs. McLane, would become operative, I think that the conclusion is unavoidable that this testator was providing for the appointment for the benefit of the surviving husband of an income, or a part of an income which these trustees would necessarily be collecting, and that therefore his intention was that the trust should continue and the income thereby be collected out of which the surviving husband might receive such share as the donee of the power might appoint. This is not a case, in my opinion, where the gift of income of property should be construed as equivalent to a conveyance of the *corpus* of the property to be held for the period during which the income is to be enjoyed. See *Parker's Executors* v. *Moore,* 25 *N. J. Eq. (10 C. E. Gr.) 228, 236; Conant* v. *Bassett, supra.*

Of course Mrs. McLane could not extend her power of appointment—could not create interests which she was not empowered to create by appointment. The broad provision of her will, undertaking to give her husband a legal life estate in both her own property and that held in trust under her father's will when applied to the trust estate, must be limited to the sort of life estate which she was empowered to appoint.

6. There are certain questions in regard to the attempted distribution by Mrs. McLane, under her power of appointment, of the *corpus* of the trust estate after her husband's death, which may arise in the future, the discussion of which at the present time would be premature. All these questions merely relate to the ascertainment of the parties who are to take the *corpus* of the trust estate upon the death of Mrs. McLane's husband, and in regard to that matter, whatever construction may be placed upon Mr. King's will or Mrs. McLane's attempted exercise of her powers of appointment under that will, the independence of the power to appoint either *corpus* or income to a surviving husband is not in the slightest degree affected. Even if we assume that

the appointment of the trust estate attempted to be made by Mrs. McLane by her will is wholly or in part invalid on account of the rule against perpetuities, or for any other reason, the validity of her exercise of the other independent power of appointment for the benefit of her surviving husband is unimpaired. I think that all the questions in regard to the construction of the power of appointment of the *corpus* which Mrs. McLane undertook to exercise, and all questions in regard to the legal effect of what Mrs. McLane undertook to do in the exercise of that power, relate solely to the disposition of the *corpus* of the estate which the trustees are bound to make after the death of the surviving husband and do not relate to any conduct on the part of the trustees in the execution of their trust in regard to which they are entitled to instructions from this court at the present time.

7. A decree will be advised instructing the complainants to retain the trust estate in their hands and to continue collecting the income thereof, and to pay over the income to the defendant, James L. McLane, the surviving husband of Fanny King McLane, during his lifetime.