Complainants comprise some of the heirs-at-law of J. Ogden Cuthbert, deceased, and seek a decree of this court declaring a resulting trust to have arisen in their behalf in certain real estate conveyed by their ancestor in his lifetime to "The Rector, Wardens and Vestrymen of Grace Church, Haddonfield, New Jersey," in trust.
The deed of conveyance bears date October 19th, 1885. It recites a money consideration of one dollar, and by words of bargain and sale grants to the party of the second part the land therein specifically described, "together with all and singular the buildings, improvements, woods, ways, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof and of every part and parcel thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, with the appurtenances." The habendum is: "To have and to hold the said premises with all and singular the appurtenances unto the said `The Rector, Wardens and Vestrymen of Grace Church, Haddonfield, New Jersey,' their successors and assigns forever, in trust nevertheless that they the said `The Rector, Wardens and Vestrymen of Grace Church, Haddonfield, New Jersey,' their successors and assigns shall and will hold the said land and premises to the use of the Protestant Episcopal Church in the diocese of New Jersey to be used only for and as a site for a chapel, school house, mission, parish building or other use of said Protestant Episcopal Church in said diocese, and that the said `The Rector, Wardens and Vestrymen of Grace Church, Haddonfield, New Jersey,' shall have power to grant *Page 186 
and convey the said lands and premises to any parish of said Protestant Episcopal Church in said diocese within whose bounds said lands and premises may come to lie by its proper title if incorporated and by apt words of conveyance, or may in the same event convey said lands and premises to the trustees of `The Episcopal Fund of the Diocese of New Jersey,' to the use of said parish."
Grace Church of Haddonfield is a religious corporation, with a church located in that borough; and due to various reasons, including among others want of finances and the establishment of other Episcopal churches or missions in the vicinity of the lot here in question — one at Collingswood in the year 1913 and one at Westmont in the year 1914 — has found it impracticable to devote the lot to the specific use designated by the donor. Accordingly, in the year 1924, it was determined to apply to the chancellor of this state for leave to sell the lot pursuant to our statutes authorizing sale of trust properties in cases of that nature. Proceedings were then taken before the chancellor (file number 55-532), and sale was thereafter ordered by the chancellor. In December, 1924, the chancellor confirmed the sale and directed the investment of the proceeds. The sale was made to one of the vestrymen of the Grace Church, who has since sold the land at a considerable profit, and not wishing to retain the profit has since secured it to the church.
The present holder of the legal title to the land has been joined as complainant herein and seeks restoration of his money in the event of his title being held imperfect. By amendment to the bill the attorney-general has been made a defendant; he has not answered or participated in the cause.
The deed of conveyance here the subject of controversy vests the fee of the land in the rector, wardens and vestrymen of Grace Church in trust for the use of the charitable organizations therein specified; accordingly it is a conveyance to a charitable use and is properly classed and defined as a public trust.
It cannot be doubted that the trust conveyance was initially valid and operative, since the charitable organizations for *Page 187 
whose use it was created were in existence and capable of taking, and the particular use to which the land was to be devoted contemplated a future, as distinguished from an immediate use, including the contemplation of the land, at some subsequent period, falling within a different parish from the one named. Accordingly, this charitable gift must be distinguished from those that fail initially and are void ab initio either through the existence of conditions precedent to their taking effect or through the absence of existing charities capable of taking. This distinction becomes important herein since our present considerations are to be devoted only to a public trust initially valid and the impracticability of performance of which in the particular manner specified by the donor has arisen through changes of subsequent conditions, including the erection of churches of the denomination specified near the donated premises.
The claim of complainants is to the general effect that by reason of the trustees named in the grant having failed to devote the land to the particular use specified by the donor, and having caused its sale under the statutory proceeding referred to, the trust has been broken and in consequence the title to the land has become vested by reverter in the heirs-at-law of the donor. The decree sought is, in effect, a decree of forfeiture.
A resulting trust does not arise in favor of the heirs-at-law of the donor of a public trust by reason of an abuse of such trust. In Mills v. Davison, 54 N.J. Eq. 659, the deed of gift to the church provided as an express condition and limitation that the church should not sell or mortgage the property and that no building should be kept or maintained or erected thereon except for purposes of public worship in accordance with the usages of the Protestant Episcopal Church (see page 662). This was held to be a public trust. At page 667 of the opinion of the court it is said: "The deed of the grantors having conveyed away the entire estate in the premises, a resulting trust will not arise in favor of the grantors by reason of an abuse of the trust." To the same effect is MacKenzie v. Trustees ofPresbytery, 67 N.J. Eq. 652 (at p. 678), and again, TrusteesPrinceton University v. Wilson, *Page 188 78 N.J. Eq. 1 (at p. 6). The same view is stated in Tud.Char. (4th ed.) 109, as follows:
"A charitable trust, which has once taken effect, can never cease during the period, perpetual or otherwise, during which it was intended to subsist; and it is immaterial what length of usage there may have been to the contrary. So, also, if a perpetual trust is created for a particular charitable purpose which has taken effect in the first instance, no subsequent failure of the purpose will defeat the trust, and it is immaterial in this case whether there was, or was not, initially any charitable intention beyond the accomplishment of the particular purpose. If the charitable devise takes effect in the first instance the heir-at-law is disinherited once and for all."
This, I am convinced, is an accurate statement of the rule defined by the authorities. And in Zollman Am. Char. § 307, it is said:
"When a valid charitable trust has been created without a provision for a reversion, it raises an implied condition against a reverter, permanently excludes the interests of the heirs and next of kin * * * and does not leave them as such a `scintilla of right.'"
The conclusion seems irresistible that this charitable trust having taken effect initially with no limitation of time for its accomplishment and no provision for reverter, and its performance in the particular manner directed having become impracticable by changing conditions which have occurred since the creation of the trust, no reverter can be said to have arisen in favor of the heirs-at-law of the donor.
It will be observed that in defining the particular use to which the land should be devoted the donor has added: "or other use of said Protestant Episcopal Church in said diocese." In what has been said touching the use defined by the donor no consideration has been here given to those words. It has been herein assumed that these supplemental words may be considered as controlled by the rule of construction of ejusdem generis. But it is not thereby intended to recognize that rule of construction as prevailing over the liberal rule of construction to be applied to charitable gifts.
Nor can the deed of gift here under consideration be regarded as analogous to a bequest of money to be applied to *Page 189 
a particular purpose initially impossible of accomplishment and in which bequest no charitable intent can be said to have existed beyond the accomplishment of the defined purpose. Here by grant a fee is vested in trust in perpetuity with no provision for reversion and with no limitation as to time of accomplishment. The trust is perpetual and the remedies incident to it are well defined and do not embrace forfeiture for non-performance. InMills v. Davison, supra (at p. 664), it is said: "Every conveyance to a charitable use is a conveyance to hold upon the trust declared, and the execution of the trust is the condition upon which the estate is taken and held, to be given effect to not by the forfeiture of the title, but by those methods by means of which a court of equity compels the performance of such trusts." Those remedies are specifically pointed out inMacKenzie v. Trustees of Presbytery, supra (at p. 670), citing Tud. Char., second and third editions. They embrace (a) following the trust estate into the hands of one to whom it has been wrongfully conveyed; (b) the following of the property into which the trust estate has been converted; (c) a proceeding against the trustees. But a reference to the authorities there cited, as also to the fourth edition of Tud. Char. 242 § 5, will disclose that these remedies are available alone to the attorney-general in behalf of the public and to the trustee orcestui qui trust in aid of the trust, and do not contemplate forfeitures of title for breach of trust or impracticability of performance by reason of changed conditions. Unless the trust here involved can be said to have been void ab initio — and I do not understand that to be even suggested — I am unable to discern any theory on which the present bill can be maintained.
The bill may be dismissed. *Page 190