The prayer of the bill is that this court take over the administration of the estate of Stella Seymour Thurber deceased and the accounting now pending before the Monmouth county orphans court. The matter is up on an order to show cause why further proceedings in the orphans court should not be stayed.
The bill sets forth this state of facts:
Mrs. Thurber, the mother of complainant, died July 20th, 1928, leaving a last will and testament, probated by the surrogate of the county of Monmouth, in and by which she gave the residue of her estate to her executors, Orray E. Thurber, her husband, and the Asbury Park and Ocean Grove bank, in trust, to pay the income to her sister for life and upon her death (she died in 1928) to the complainant for life, and upon the latter's death, to her issue, and if no issue, then over to others.
December 7th, 1928, the executors filed an inventory appraised at $101,128.39, including $63,000 in cash; $10,000 in Liberty bonds; $5,000 in New York City bonds and $6,000 in shares of the Standard Oil Company of New Jersey. The securities were converted into cash.
October 23d 1929, the executors filed their final account charging themselves with the inventory and an additional sum of $20,217.51 cash, a total of $121,345.80, and prayed allowances for disbursements of $5,238.23, leaving a net balance of $116,107.57. The executors invested the cash $35,000 in Monmouth Title and Mortgage Guaranty Company's first mortgage bonds; $20,000 in Jersey Mortgage and Title Company's bonds; $10,000 in Fidelity Union Title and Mortgage Company's bonds; $10,000 in a bond and mortgage of one Capibianco; $15,000 in a mortgage of one Erwin L. Reed, and $10,000 in a mortgage of one Frederickson. *Page 482 
January 2d 1930, the account was allowed by the orphans court, and, after commissions and costs, the executors were charged with a net balance of $111,648.98.
December 24th, 1931, the Asbury Park and Ocean Grove Bank was taken over for liquidation by the commissioner of banking and insurance, and five days following, the Monmouth Title and Mortgage Guaranty Company was declared insolvent and receivers were appointed.
June 16th, 1932, the Commercial Trust Company of New Jersey was substituted as trustee in the place of Asbury Park and Ocean Grove Bank.
September 16th, 1932, the trustees, Thurber and the Asbury Park and Ocean Grove Bank, filed their account in the orphans court, in which they charged themselves with the balance on hand as executors $111,646.98 and three additional sums, a total of $113,683.03, and claimed credit for the investments made by them as executors, which they had taken over in kind as trustees and later turned over to the Commercial Trust Company of New Jersey upon its substitution.
The complainant filed exceptions to the investments by the executors in the securities of the Monmouth Title and Mortgage Guaranty Company, Jersey Mortgage and Title Company, Fidelity Union Title and Mortgage Company, and in the Capibianco, the Reed and the Frederickson mortgages, and also excepted to the sale of the Liberty bonds, New York City bonds, and the shares of the Standard Oil Company. There were also exceptions to the administration of the trustees, for their failure to properly conserve the estate. Upon the hearing, the orphans court refused to entertain the exceptions to the executors' account, but was ready to proceed with the exceptions to the trustees' mismanagement.
The causes for action alleged are:
At the time the executors' account was allowed the complainant was an infant, residing with her stepfather-trustee. Notice of the settlement of the account (rule 25) was mailed to her, care of her stepfather, which, she alleges, never came to her, and she charges that her stepfather deliberately withheld *Page 483 
from her information that the account was being passed upon; that no guardian had been appointed for her and she was unrepresented.
The bonds of the Monmouth Title and Mortgage Guaranty Company were not secured by first mortgages on real estate of less than sixty per cent. of the fair value of the mortgaged property, as required by law; several directors of the Asbury Park and Ocean Grove Bank were directors of the Monmouth Title and Mortgage Guaranty Company; there was a close affiliation between the two companies, and the Asbury Park and Ocean Grove Bank purchased the bonds, not for the purpose of making a safe investment, but to help the Monmouth Title and Mortgage Guaranty Company; the investment would not have been made had there not been the interlocking directorate. The bank was charged with knowledge that the affairs of the Monmouth Title and Mortgage Guaranty Company were becoming precarious and should have liquidated the investment.
The Capibianco mortgage exceeded sixty per cent. of the value of the mortgaged premises. The property was sold for taxes in September, 1932; interest has been unpaid since August, 1931, and the property has depreciated and is of little value.
The Reed mortgage exceeded sixty per cent. of the value of the mortgaged premises. Reed was the trust officer of the Asbury Park and Ocean Grove Bank and, in co-operation with the president of the bank, invested the trust funds in his own mortgage. This, it is charged, was a fraud upon the estate. It is further charged that the trustee negligently permitted the taxes to accrue and the property to depreciate in value.
The other investments are not impugned, nor are the sales of the securities, as they were by the exceptions filed in the orphans court, copies of which are annexed, but not made a part of the bill.
The proof is that the Asbury Park and Ocean Grove Bank was trustee of the mortgage collateral given by the Monmouth Title and Mortgage Guaranty Company, to secure the bonds *Page 484 
in which the trust funds were invested. Its president was a director of the latter and the president of the latter was a director of the former. They were the only common trustees. The proof also is that the securities of the Monmouth Title and Mortgage Guaranty Company and of the Capibianco and Reed mortgages were, at the time of the investments, within the legal requirements; less than sixty per cent. of the value of the mortgaged premises. It also is the fact that the Asbury Park and Ocean Grove Bank is no longer in liquidation.
We must follow the established practice of withholding equity's inherent jurisdiction over executor's accounts, unless it appears that the jurisdiction of the orphans court is inadequate, or some special reason is apparent, calling for equity's intervention.Streeter v. Braman, 76 N.J. Eq. 371; Summerill v. Summerill,99 N.J. Eq. 502. The orphans court, in the exercise of its concurrent jurisdiction over accounts of executors, adjudges the rights and obligations of accountants upon equitable principles, and in this respect is vested with the power of discovery as fully as is equity. Hill v. Hill, 79 N.J. Eq. 521.
An analysis of the bill fails to disclose a single item with which the orphans court cannot cope or any other justifiable reason for interfering with its administration.
The refusal of the orphans court to consider exceptions to the executors' account, on a hearing of the trustees' account, was proper in substance and procedure. Shearman v. Cameron,78 N.J. Eq. 532; In re Slater's Estate, 88 N.J. Eq. 296. The complainant's course was to apply to the orphans court to open the executors' account, with leave to file exceptions. The orphans court, upon proof that the notice of the hearing of the executors' account had been fraudulently suppressed, would have promptly set aside all that had gone before, and given her a hearing. Aside from the alleged fraudulent procurement of the decree allowing the account, the orphans court would be moved to open the decree upon a showing that the complainant was an infant at the time of the allowance of the executors' account, had no notice of the hearing and was without a guardian to represent her; the *Page 485 
absence of a guardian having deprived her of timely contesting the account. It is the practice in the probate court in proceedings of this character to decree against infants, upon notice, without guardian representation. Such decrees are no doubt valid upon collateral attack (Ordinary v. Webb,112 N.J. Law 395) but voidable at the instance of the infant on coming of age. No judicial determination is conclusive unless upon a hearing or an opportunity to be heard. Upon an executor's or trustee's accounting in equity, guardians are always appointed. See Heath v. Maddock, 81 N.J. Eq. 469.
Counsel lays great stress on his client's infancy, the fact that she was unrepresented by guardian, and that the decree was procured by fraud, as grounds for coming into equity. The orphans court should be allowed to purge its own record; it has, as already indicated, ample jurisdiction to relieve the complainant's wrong suffered through her disability. A refusal would find its remedy in an appeal to the prerogative court. This court should not step in at this time, when the relief may be had for the asking in the orphans court.
If the fact of the interlocking directorate of the Asbury Park and Ocean Grove Bank and the Monmouth Title and Mortgage Guaranty Company entitles the complainant to repudiate the investment in the bonds of the latter (Stewart v. Lehigh Valley RailroadCo., 38 N.J. Law 505), the right may be exercised in the orphans court as well as it could be on this bill, and if because of the alleged affiliations between the two companies, or for any other reason, the investment was improper as a matter of law, or voidable as a matter of equity, the orphans court has the power to investigate and decide and reject the investment, as fully as this court has.
The attack upon the Capibianco mortgage raises a single issue, whether it was a legal investment as required by the statute, and obviously is triable in the orphans court.
The Reed mortgage, the proofs show, was held by an estate, of which Watson, the president of the bank, was executor, and to close the estate he sold it to the bank, trustee of the Thurber estate. The evidence leaves no doubt that at the time, the value of the mortgaged premises was double the *Page 486 
amount of the investment and that the mortgage was a safe and desirable security. If there was irregularity in the trustee purchasing the mortgage on the property of its trust officer, no fraud in fact is shown. If it amounts to a constructive or legal fraud and subject to repudiation, the orphans court has the power to disallow it as an item of discharge of the principal of the estate. The characterization, in the bill, of this transaction as a fraud, without more, is not sufficient to persuade this court to entertain the bill, under its general jurisdiction over frauds, nor are the circumstances such as to move the court, in the exercise of a sound judicial discretion, to take over the administration, and oust the orphans court of its jurisdiction.Filley v. Van Dyke, 75 N.J. Eq. 571.
The order to show cause will be dismissed. *Page 487