Complainants, as executors under the last will and testament of Joseph Greenstone, deceased, seek instruction from this court.
Under the terms of the Greenstone will the widow was given a life interest in a small portion of the estate and practically the entire balance of the estate was left to charitable organizations, among others being the defendants Hiram Lodge No. 81, Free and Accepted Masons, Chestnut Hill, Philadelphia, Pennsylvania, The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, Excelsior Consistory, A.A.S.R., of the Valley of Camden, New Jersey, and Golden Slipper Square Club No. 470, Philadelphia, Pennsylvania.
Testator's property consisted in part of real estate in Pennsylvania. The widow and a niece of deceased, as sole next of kin and heirs-at-law of decedent, filed caveats against the probating of the will and the widow also elected to take contrary to the provisions of the will as to the real estate situate in Philadelphia.
The proceedings under the caveats aforesaid were adjourned from time to time and prior to any final hearing thereon the charitable organizations aforementioned entered into compromise agreements with the widow, Mrs. Greenstone, under the terms of which she agreed to and did withdraw her caveat and under the terms of which she further agreed to procure the withdrawal of the niece's caveat, which withdrawal was likewise effected.
The compromise agreements aforesaid result in the widow receiving approximately $69,000 from the four charitable organizations aforesaid, out of which, of course, she must satisfy the niece under her arrangement with the niece for the withdrawal of her caveat.
Complainants, as executors, pose five questions for this court's consideration, namely: (1) Are the contracts made by the four charitable legatees with the widow, valid and *Page 306 
enforceable? (2) If the answer to the first question is in the affirmative, are complainants, who are personally liable for federal estate tax on that portion of the charitable legacies diverted to the widow, entitled to reimbursement from the widow, or should such taxes be paid, under the seventeenth paragraph of the will, from the decedent's estate; or, by reason of such diversion, should each of said charitable legatees reimburse complainants for such tax? (3) Are complainants entitled to reimbursement from the widow of federal estate tax assessed against them, and for which they are personally liable, by reason of the devolution on the widow of one-half the Pennsylvania realty under her election? (4) Are complainants entitled to be reimbursed by the widow for Pennsylvania inheritance tax heretofore paid by First Camden National Bank and Trust Company, as administrator pendente lite of the estate of the decedent herein, on the one-half of the Pennsylvania realty which devolved upon her pursuant to her election? (5) Should the charitable legacies be administered by the Attorney-General inasmuch as the charitable legatees have evinced their unwillingness to be bound by their respective trusts?
All beneficiaries under the Greenstone will were made parties defendant and in addition thereto the Attorney-General and Kathryn Weiss, testator's niece and caveator as aforesaid, were likewise made parties defendant.
At the final hearing, pursuant to notice, defendant Kathryn Weiss made application to be permitted to file an answer, in which she reserved the right to move to strike the bill of complaint. This motion to file an answer out of time was opposed on the ground that Miss Weiss was not a necessary party to the bill, even though she had been made a party by the complainant, as above noted. The court granted the application and permitted the filing of the answer.
Also at the final hearing counsel for the widow, pursuant to notice, moved to amend the answer theretofore filed in behalf of the widow by reserving therein a motion to strike. This application was not contested and the order was granted.
The motions to strike aforesaid are based on the following reasons: (1) that the fifteenth, sixteenth, seventeenth, eighteenth, *Page 307 
nineteenth and twentieth paragraphs of the first cause of action, and each of said paragraphs as they are repeated in the second, third, fourth, fifth and sixth causes of action set forth in the bill of complaint are irrelevant and immaterial, are not germane to the issue and are so framed as to embarrass and delay a fair trial of this cause. (2) Complainants have no right or standing in this court to prosecute this suit. (3) Complainants are not alleged to have been or to be officers or members of the defendant charitable organizations or of any other charitable legatee named in the Greenstone will. (4) Complainants are not alleged to have any beneficial interest in any charitable trust created by the decedent, Joseph Greenstone. (5) Want of equity, in that the complainants are not alleged to be aggrieved.
The basic question for determination of any of the questions propounded by complainants is whether or not the compromise agreements aforesaid are valid. If they are invalid there would be no federal tax assessable against the legacies of the charitable organizations, and if they are valid the question would be whether or not the assessment on the sums diverted by means of the compromise agreements should be paid by the charitable organizations or out of the funds of the estate, and as to the widow, the question of the payment or non-payment of federal taxes depends on the validity of the compromise agreements. This, however, is not so with reference to question 4, which deals with taxes assessed by the State of Pennsylvania by reason of the widow's election.
The Attorney-General has filed the usual answer seeking the protection of the court under any decree or order it may make.
The Greenstone will was probated after the withdrawal of the caveats aforesaid in the Atlantic County Orphans Court and administration of the estate continues under the jurisdiction thereof.
At the outset it is argued by Mrs. Greenstone and Miss Weiss that the executors as such have no standing to seek relief because it is alleged that (1) "complainants as executors have no right or standing to maintain this suit questioning the validity of agreements made by trustees of a charitable *Page 308 
trust, or, the disposition of any of the funds of said trust by the trustees;" (2) "the advice and findings sought by the complainants relate to matters beyond the duties of the executors;" (3) "the relief sought by complainants relates to matters that can and should be disposed of in the Orphans Court in the administration of the estate. It is neither necessary or proper to pray this court to advise with reference thereto at this time."
There seems to be no doubt but that the ultimate purpose of the executors in this suit is to enforce the trust set up in their decedent's will. They have been advised of the compromise agreements under the terms of which a portion of the trust moneys are to be diverted to the use of the widow and through her to the niece. The executors say that this is a frustration of the will of their decedent and that the agreements are therefore invalid. True, counsel, in his brief, says: "complainants do not seek to enforce any of the charitable trusts" but "on the contrary * * * seek to prevent the frustration of their decedent's will." But it is not what counsel says is the purpose of the bill but that which the averments of the bill disclose which controls.
Do the executors have a standing in this court to enforce the charitable trusts and bring into question the validity of the compromise agreements? The answer is "No."
It has been repeatedly held, as set forth in the Restatementof the Law on Trusts, § 391:
"A suit can be maintained for the enforcement of a charitable trust by the Attorney-General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest or by the settlor or his heirs, personal representatives or next of kin."
The decisions of our courts are many that a party seeking to enforce a trust must have some interest therein and that the executors, as such, have no such interest. MacKenzie v.Trustees of Presbytery, c., 67 N.J. Eq. 652; 61 Atl. Rep. 1027;Ludlam v. Higbee, 11 N.J. Eq. 342; Attorney-General v.Moore's Ex'rs, 19 N.J. Eq. 503; In re St. Michael's Church,76 N.J. Eq. 524; 74 Atl. Rep. 491; *Page 309 Cuthbert v. McNeill, 103 N.J. Eq. 184; 142 Atl. Rep. 667;affirmed, 104 N.J. Eq. 495; 146 Atl. Rep. 881; Hewitt v. CamdenCounty, 7 N.J. Mis. R. 528; Larkin v. Wikoff, 75 N.J. Eq. 462;79 Atl. Rep. 365; First Camden National Bank v. Wilentz,Attorney-General, 129 N.J. Eq. 333; 19 Atl. Rep. 2d 648.
Complainants herein sue in their capacity as executors and not as trustees. The duties of an executor and trustee are entirely distinct, as pointed out by Chancellor Walker, In re Hibbler'sEstate, 78 N.J. Eq. 217; 78 Atl. Rep. 188; affirmed, 79 N.J. Eq. 230; 81 Atl. Rep. 1133.
"The duties of an executor and those of a trustee are well recognized in the law as being distinct. The general duties of an executor are to collect the effects of the deceased, pay the claims against his estate and distribute the residue to those entitled. 11 Am. Eng. Encycl. L. (2d ed.) 903."
See, also, Casperson v. Dunn, 42 N.J. Eq. 87;6 Atl. Rep. 488; Baxter v. Baxter, 43 N.J. Eq. 82; 10 Atl. Rep. 814; In reHibbler's Estate, supra; In re Quimby, 84 N.J. Eq. 1;92 Atl. Rep. 56; Caruso v. Caruso, 103 N.J. Eq. 487; 143 Atl. Rep. 771;Kidder's Exrs. v. Kidder, 56 Atl. Rep. 154; Outwater v.Benson, 81 N.J. Eq. 154; 85 Atl. Rep. 206; Holden v. Morgan,115 N.J. Eq. 59; 169 Atl. Rep. 546; Mosig v. JerseyChiropodists, 122 N.J. Eq. 382; 194 Atl. Rep. 248.
A reading of the compromise agreements discloses that they have no binding force until passed upon by a court of competent jurisdiction and if that court declares them invalid the trusts are relieved of all liability under the agreements. The agreements further provide the manner in which and by whom the opinion of a court of competent jurisdiction shall be obtained and fix the time for such a submission of that question to such a court as not later than three months after distribution.
The legislature of this state, R.S. 3:15-1 to 8, has provided that compromises such as those attempted in the instant case may be effected and thus possibly declared a public policy, contrary to the harsh rule theretofore existing. In *Page 310 
so doing the legislature has conferred jurisdiction on the Orphans Court as the tribunal to determine whether the compromise is for the "interests" of all parties and therefore valid.
It is true that all of the defendants who have entered into the compromise agreements, other than Mrs. Greenstone and Miss Weiss, by way of answer say — we desire that the question of validity be passed upon by this court. However, they do not seek any affirmative relief by way of counter-claim and their assent that this court pass on the question does not confer a right on complainants to seek this court's advice and thus enforce the trusts set up in decedent's will, in the absence of an interest in the complainants to contest the matter.
Until the question of validity of the compromise agreements is determined in a suit between proper parties by a court of competent jurisdiction there is, at most, a moot question which complainants ask this court to pass upon. If the agreements are invalid then, of course, there is no federal inheritance tax on the charitable gifts. If valid, the question of the source of the payment of the moneys diverted from the charitable gifts would arise, but certainly this court is not to be asked to pass upon that question until it arises or is imminent. There has been no application for distribution as yet, nor has there been any determination of the validity of the agreements.
It is well settled that the jurisdiction of the court to direct trustees or give advice will only be exercised as far as actually needed for existing emergencies and will not be extended to give directions as to his duty in future contingencies. See Kidder'sEx'rs v. Kidder, supra; Tuttle v. Woolworth, 62 N.J. Eq. 532;50 Atl. Rep. 445; Hewitt v. Green, 77 N.J. Eq. 345;77 Atl. Rep. 25; Varick v. Smith, 69 N.J. Eq. 505; 61 Atl. Rep. 151;Ogden v. McLane, 73 N.J. Eq. 159; 67 Atl. Rep. 695; Bonnell v.Bonnell, 47 N.J. Eq. 540; 20 Atl. Rep. 895; Brunyate v.Chandler, 99 N.J. Eq. 67; 132 Atl. Rep. 517.
The will of decedent was probated in the Atlantic County Orphans Court and this court is not even asked to take over *Page 311 
the administration of the estate and there would appear to be no apparent reason why the court should take over, even had it been asked to do so.
At the time of the application for distribution the Orphans Court will, of course, protect the executors with reference to the possible payment of the federal inheritance tax arising by reason of the diversion of the charitable gifts to the widow and Miss Weiss and would have complete jurisdiction to so form its decree as to afford that protection.
It has been frequently held that the Court of Chancery in exercising its discretion in matters of concurrent jurisdiction will not disturb the jurisdiction of the Orphans Court excepting in cases of necessity. Outwater v. Benson, supra; Summerill
v. Summerill, 99 N.J. Eq. 502; 134 Atl. Rep. 113; Civic, c.,
v. Mechanics, c., 115 N.J. Eq. 66; 169 Atl. Rep. 696; Thomas
v. Thomas, 20 N.J. Mis. R. 419; Filley v. Van Dyke, 75 N.J. Eq. 571; 72 Atl. Rep. 943; Hill v. Hill, 79 N.J. Eq. 521;82 Atl. Rep. 338; Clayton v. Asbury Park, c., 115 N.J. Eq. 480;171 Atl. Rep. 502.
A different situation exists as to the requested instructions with reference to the assessment by the State of Pennsylvania of an inheritance tax on the real estate which devolved upon the widow by virtue of her election to take against the will, and it would seem that the executors are entitled to be instructed on that phase of the case.
There would seem to be no doubt that clause 17 of the will is non-operative as to the payment of this inheritance tax. That clause of the will reads:
"I direct that all legacies and the trust set forth herein * * * shall be paid free from any inheritance, transfer, succession, legacy or estate tax, and that all such taxes shall be paid out of the residue of my estate."
As said before, the widow took against the will and received nothing by virtue thereof and can claim no benefit thereunder, with the result that this tax assessed against the real estate must be paid in accordance with the provision of the Pennsylvania law, which I am advised is that the liability is a direct tax, so that complainants are entitled to a decree *Page 312 
of reimbursement for the 2% direct tax from Mrs. Greenstone.
A decree may be entered in accord herewith, on notice, at which time the question of counsel fees may be discussed.