26 N.J. Super. 412 (1953)
98 A.2d 332
IN THE MATTER OF THE ESTATE OF ELIZABETH KING HOSFORD, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1953.
Decided June 11, 1953.
*415 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Solomon Lautman argued the cause for the appellant James M. Engle.
Mr. Thomas J. Smith argued the cause for the respondents and cross-appellants Hosford Brackett and another (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This is a proceeding for directions instituted in the Monmouth County Court by the Bankers Trust Company as surviving trustee under the will and codicils of Elizabeth King Hosford, deceased. The question *416 presented arises upon the codicil dated April 26, 1926, which we will quote at length. It gives testatrix' residuary estate to trustees to divide into three equal portions and to hold the same for the following purposes:
"A. The income from one such portion is to be paid in quarterly installments unto my daughter, Mary Hosford Brackett Barrows, for and during the term of her natural life, and upon her death to be paid to each of her children, to wit; Bonita Cammann, Hosford Brackett and Ernestine Brackett, the sum of Ten Thousand ($10,000.00) Dollars, absolutely, out of the principal sum from which the said Mary Hosford Brackett Barrows has been receiving the income.
The balance of such principal sum I direct to be divided into three (3) equal shares or portions, and the income from each of such shares or portions is to be paid in quarterly installments unto each of my said grandchildren, Bonita Cammann, Hosford Brackett and Ernestine Brackett, for and during the term of his or her natural lifetime, and upon the death of either of said grandchildren, I direct that the principal sum from which he or she has been receiving the income, shall be divided equally between all of my surviving grandchildren.
B. The income from one such share or portion is to be paid in quarterly installments to my daughter, Faith Hosford Engle, for and during the term of her natural lifetime, and upon her death to pay to her son, Peter King Engle, the sum of Ten Thousand ($10,000.00) Dollars absolutely, out of the principal sum from which the said Faith Hosford Engle has been receiving the income.
The balance of such principal sum I direct to be paid in quarterly installments to my grandson, Peter King Engle, for and during the term of his natural lifetime, and upon the death of my said grandson, Peter King Engle, I direct that the principal sum from which he has been receiving the income be divided equally between all of my surviving grandchildren.
C. The income from the remaining share or portion of said trust estate, I direct to be divided into as many shares or portions as the number of grandchildren surviving me, and the income to be paid in quarterly installments from One (1) such share unto each of said grandchildren for and during the term of his or her natural lifetime, and upon his or her death, the principal sum from which he or she has been receiving the income is to be divided equally among all my surviving grandchildren."
Testatrix died June 14, 1926, survived by the two daughters and four grandchildren who are named in the codicil. On June 6, 1927 one of the daughters, Faith, gave birth to an infant, James M. Engle, and four days later Faith died. The other daughter, Mrs. Barrows, died in 1939 and the *417 first of the grandchildren to pass away, Bonita Shainwald (formerly Cammann), died March 1, 1951.
The question is: Who are entitled to the principal sum from which Bonita Sainwald had been receiving the income? The testatrix, by the last line in section A and the last line in section C of the codicil, directed the principal to be "divided equally between all of my surviving grandchildren" or "among all my surviving grandchildren." The County Court interpreted this to mean those grandchildren who were living at the time of testatrix' death and who survived Mrs. Shainwald. The interpretation excludes from participation in the fund, James, who was not yet conceived at testatrix' death, and also the estate of Mrs. Shainwald, who did not survive herself. James appeals, but the representative of Mrs. Shainwald does not.
Let us re-read the codicil. It is apparent that the several gifts of $10,000 to each of the three grandchildren who are named in the first paragraph of section A and to the one named in the first paragraph of section B, are gifts to them as individuals and not as members of a class. And so are the bequests of income "to each of my said grandchildren," naming the three children of Mrs. Barrows, and "to my grandson, Peter King Engle." Rippel v. King, 126 N.J. Eq. 297, affirmed 128 N.J. Eq. 179 (E. & A. 1940). We come to a class gift in the opening lines of section C, where testatrix directs the income from one-third of her residuary estate "to be divided into as many shares or portions as the number of grandchildren surviving me" and one share to be paid to each of said grandchildren for life. Plainly, she intended that the grandchildren living at her death, whether three, four or five, and whether or not they were mentioned by name in the codicil, should take in equal shares the whole income of the one-third of the residue. As it turned out, she left the four grandchildren who are named in the codicil. It has been determined in an earlier suit that the class did not open upon the birth of James Engle to let him in, and that the four named grandchildren continued to take the entire income to the exclusion of James.
*418 Now we reach the disposition of the corpus. It is the subject of the last part of each of the three sections, A, B and C, and in each place testatrix directs corpus to be divided between or among all of her surviving grandchildren.
A part of the corpus is to be distributed upon the death of each grandchild and it happens that Mrs. Shainwald is the first to die. It seems to us reasonable to hold that the surviving grandchildren are those outliving the one whose death occasions the distribution. And therefore that Mrs. Shainwald's representative does not share in the present distribution. This is in accordance with the well-established canon that, in the absence of an indication of a contrary intention, where there is a gift to survivors following an estate for life, survivorship refers to the termination of the particular estate, and the members of the class who outlive the life tenant are the only ones who share in the remainder. Stevens v. Edson, 82 N.J. Eq. 105 (Ch. 1913); Trenton Trust, etc., Co. v. Robinson, 83 N.J. Eq. 226 (Ch. 1914); Cuskaden v. Steelman, 88 N.J. Eq. 554 (E. & A. 1917); Van Nest v. Van Nest, 126 N.J. Eq. 234 (E. & A. 1939).
The question whether James Engle is included brings forward another rule for the construction of wills. Upon a class gift in remainder after a life estate, all who answer the description and who come into existence before the time of distribution arrives, become members of the class. If the gift is contingent until the life estate ends, this is the obvious construction. If the gift vests at testator's death in the members of the class then in esse, the class opens to let in after-born members, so that they may share in the remainder. 3 Jarman on Wills (1951 ed.), 1663; Feit's Exr's v. Vanatta, 21 N.J. Eq. 84 (Ch. 1870); Ward v. Tomkins, 30 N.J. Eq. 3 (Ch. 1878); Brokaw v. Emens, 84 N.J. Eq. 389 (Ch. 1915); In re Helme's Estate, 95 N.J. Eq. 197 (Ch. 1923); Trenton Banking Co. v. Hawley, 7 N.J. Super. 301 (Ch. Div. 1950). It is reasonable to assume that the inclusion of any after-born grandchildren was intended by the testatrix, for the fact of birth after, rather than before, her own death appears an inadequate reason for excluding *419 them from their grandmother's bounty. Lastly, she ordered distribution among "all my surviving grandchildren." James comes within that description and ought to share in the principal sums with his brother and cousins.
But some of the respondents urge that James is concluded by the decree in a former cause by which it was adjudged that he could take nothing under Mrs. Hosford's codicil. The court below based its judgment in the present action on that theory.
On August 23, 1927 the executors and trustees of Mrs. Hosford's will filed their bill of complaint in Chancery of New Jersey, naming as one of the defendants James M. Engle, who was then 2 months and 17 days old. Not only his mother but also his father was dead. Process of subpoena was issued and returned "not found"; notice to appear and answer was published in a newspaper printed in Red Bank, New Jersey. Notice was mailed to him at 766 St. Oakland Street, Pasadena, California, and a similar notice was mailed to his brother Peter, who was about two years old, at a slightly different address, 755 St. Oakland Street. The record is silent whether or not the notices were delivered, and whether they reached anyone who was interested in protecting the rights of the infants. No one appeared for them in the suit, so the clerk of the court was appointed their guardian ad litem. He filed no answer and did nothing in their behalf. No proofs were received in the cause, but the decree was based on "an agreed state of facts."
The institution of the first action seems to have been occasioned by the birth of James, which raised the question whether he should share under section C of the codicil in the distribution of income that the trustees were ordered to make among the grandchildren surviving testatrix. No other question of construction could arise  at least counsel suggest none  until one of the grandchildren should die. As it turned out, none of the grandchildren passed away until March 1, 1951  23 years, 6 months and 8 days after the bill of complaint was filed. Yet the trustees as complainants in that bill asked in general terms for directions as "to whom *420 they are to distribute the income or corpus of the estate." And the court, having heard the arguments presented for the children of Mrs. Barrows, adjudged that "those grandchildren taking under the provisions of subdivisions A, B and C" of the codicil "shall be Bonita Cammann, Hosford Brackett, Ernestine Brackett and Peter King Engle, being all of the grandchildren surviving at the death of the testatrix; and that the grandchild, James M. Engle, the after-born grandchild, does not take by virtue thereof."
The jurisdiction of a court of equity to give directions to fiduciaries is established beyond debate, whether it be inherent in a court of that nature, or be based on legislative enactments such as the Chancery Act of 1915, section 7, or the Uniform Declaratory Judgment Act, N.J.S. 2A:16-50 et seq. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949). But it has long been the general practice of courts not to attempt to adjudicate questions that may arise in the future, or to instruct trustees with respect to the distribution of the trust estate until the time for distribution arrived. Ogden v. McLane, 73 N.J. Eq. 159 (Ch. 1907); Matlock v. Matlock, 98 N.J. Eq. 572 (Ch. 1925); First Camden, etc., Co. v. Hiram Lodge, 134 N.J. Eq. 303 (Ch. 1944); Pennsylvania Co. for Banking and Trusts v. Clarkson, 6 N.J. Super. 179 (App. Div. 1950). Both the general rule and exceptional circumstances that may move the court to give instructions in preparation for an anticipated event are illustrated in Latorraca v. Latorraca, 132 N.J. Eq. 40 (Ch. 1942), affirmed 133 N.J. Eq. 298 (E. & A. 1943). The most thorough opinions on the subject agree that future rights will be the subject of a decree only "where all the parties who in any event will be entitled to the property are of age and are ready to argue the cause." Curtis v. Sheffield, 21 Ch. D. 1 (C.A. 1882); Kariher's Petition, 131 A. 265 (Pa. Sup. Ct. 1925). And generally see Borchard, Declaratory Judgments, c. IX. Whether or not a court will treat a controversy as ripe for decision is largely a matter of discretion.
*421 A declaratory judgment is generally conclusive on the parties. Restatement, Judgments, § 77. But in the interpretation of such a judgment if it involves future rights, the greatest strictness is observable and doubts have been cast on the jurisdiction to declare future rights. Ashhurst v. Lippincott, 56 N.J. Eq. 840 (E. & A. 1898), considered a will of which the beneficiaries were the testator's "surviving children." A final Chancery decree directed the division of the estate into four shares, one share to be held by trustees under the will for a daughter, Mrs. Lippincott  this on the assumption that testator left only four children. But in a later suit brought after Mrs. Lippincott's death, it was established that testator was survived by five children, one of whom died soon after testator, leaving the other four as next of kin of the deceased child. Despite the decree in the earlier case, the court held that Mrs. Lippincott's representative was entitled to one-fifth of the share that had been held in trust for her, and that only the balance of the share passed to remaindermen under her father's will. The court said:
"Until the death of Mrs. Lippincott it was uncertain who would be entitled to any of the principal of the fund, and final decision upon the question of the right of any portion of the principal would not have been within the jurisdiction of the court, it seems to me, until the question of their rights had actually arisen for determination after the death of the life tenant, and in a suit to which the remaindermen were parties in that capacity and upon issues distinctly raised between the parties claiming to be entitled."
The decision is a strong instance of avoiding the effect of such a decree upon future interests. Similar cases are Tuttle v. Woolworth, 62 N.J. Eq. 532 (Ch. 1901), and In re Hubert, 98 N.J. Eq. 35 (Ch. 1925), affirmed 99 N.J. Eq. 886 (E. & A. 1926).
The problem of the effect to be given the Chancery decree may also be considered under the principles governing equitable relief against judgments. While the Monmouth County Court has no independent equitable jurisdiction, the court in causes within its jurisdiction "may grant legal *422 and equitable relief so that all matters in controversy between the parties may be completely determined." N.J. Const., 1947, Art. VI, sec. IV, par. 5. Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951). The only written pleading in the present action was the trustee's complaint for the allowance of its account and for an order of distribution. The cause was brought on and disposed of in a summary manner on notice. It does not appear that the decree in the earlier suit was set up in any formal or written pleading. In this situation, it seems proper to consider whatever equitable defenses may be advanced against the decree.
The principles governing equitable relief from a judgment are concisely set forth in the Restatement, Judgments, c. 5. In general, such relief may be granted to an injured party "if in the action he had no reasonable opportunity to have determined impartially a meritorious claim or defense which he had." § 118. In particular, an aggrieved person may have equitable relief "if without fault he did not know of the action," and this was due to "error of the court or its officers or the misfortune of the present complainant in a case where the other party to the judgment * * * was guilty of sharp practice." § 120. Or "if there was no fair trial because he was subject to an incapacity and was so poorly represented that there was no substantial presentation of his case and if the judgment was obtained in an action between him and his fiduciary." § 123. Our New Jersey decisions are in general accord. Power's Ex'rs. v. Butler's Adm'r., 4 N.J. Eq. 465 (Ch. 1844); Truitt v. Darnell, 65 N.J. Eq. 221 (Ch. 1903); Yung v. Roll Stickley & Sons, 88 N.J. Eq. 251 (Ch. 1917); Commercial, etc., Bank v. Hamilton, 99 N.J. Eq. 492 (Ch. 1926), affd. 101 N.J. Eq. 249 (E. & A. 1927); C. & D. Building Corp. v. Griffithes, 109 N.J. Eq. 319 (Ch. 1931); Crandol v. Garrison, 115 N.J. Eq. 11 (Ch. 1933). In Herbert v. Herbert, 49 N.J. Eq. 70 (Ch. 1891), affirmed 49 N.J. Eq. 565, 566 (E. & A. 1892), dissent 50 N.J. Eq. 467 (E. & A. 1892), Vice-Chancellor Van Fleet summarized the philosophy underlying this equitable power over judgments:
*423 "It is a rule of justice, constituting part of the jurisprudence of every enlightened nation, that no person shall be deprived of his rights, either of person or property, by judicial sentence, without an opportunity of being heard in his defense. And it is equally certain that no code of laws, framed to promote justice, will permit one man to acquire an unimpeachable title to the property of another by means of a judgment which is unsupported by a valid cause of action, and which the person, whose property has been taken from him by means of it, has never had an opportunity to contest or defend."
In the suit brought by the executors and trustees in 1927, James Engle had no reasonable opportunity to present his claim. He was a helpless infant, represented so poorly that his case was not presented at all, and the judgment was obtained in an action in which his fiduciaries were the complainants. The fact that he was not adequately represented was, or may have been, due to the manner in which the fiduciaries managed the cause. We have already noted that, contrary to established rules, they procured directions concerning interests and rights arising only in the future. The notice of the suit that they caused to be published and to be mailed to the infant at what we will assume was his residence, gave no inkling that the court would be asked to adjudicate the interests in remainder after the death of Bonita. It only stated that the bill was filed "for the purpose of having the last will and testament of Elizabeth King Hosford construed, and for the purpose of obtaining instructions to * * * the executors and trustees named in said will." The notice did not, as required by the Chancery rules, specify why the baby was made a defendant. If the notice had stated that an object of the suit was to obtain an adjudication as to who would be entitled to share in the distribution of principal after the death of each grandchild, and that the infant James was made a party because he claimed or might claim a right to share in such distributions  it is probable that some interested relative would have engaged counsel to press the claim of the infant.
On the whole case it appears to us inequitable to allow James to be bound by the Chancery decree in so far as it adjudges (or may be deemed to adjudge) that he takes no *424 part of the corpus. And, as we construe the codicil, James shares equally with the other grandchildren who survived Mrs. Shainwald in the principal sums from which she received the income under sections A and C of the codicil.
The judgment is reversed on the appeal of James Engle. It is affirmed on the cross-appeal from so much of the judgment as allowed a fee to his attorney.