IN THE MATTER OF THE ESTATE
OF CAROLINE A. STILLMAN, DECEASED.

Union County Court
Probate Division

Decided June 2, 1965.

*Mr. Raymond A. Coleman,* attorney for plaintiff trustee, Commercial Trust Company of New Jersey (*Messrs. Anderson, Rugge & Coleman,* attorneys).

*Mr. J. Theodore Begen,* attorney for Elizabeth Jane Stillman.

*Mr. Edward W. McGrath,* guardian *ad litem* for unborn issue of adopted grandchildren.

*Mr. Cuddie E. Davidson, Jr.,* guardian *ad litem* for Ralph S. Hare and Luise H. Hare.

FULOP, J. C. C. This is an application by Commercial Trust Company of New Jersey, surviving trustee under the last will and testament of Caroline A. Stillman, deceased, for approval of the third intermediate account and supplemental account, for allowances and for instructions. The question on which instructions are asked is whether adopted daughters of a son of decedent are entitled to take under a testamentary gift over to the son's issue.

Caroline A. Stillman executed her will on August 8, 1929 and died on April 2, 1931. She left three children her surviving, namely, a daughter, Ruth E. Stillman, and two sons, Ralph Griffith Stillman and Frank William Stillman.

Ruth E. Stillman survives at a great age, never having married. Ralph Griffith Stillman was born in 1882 and died on November 17, 1950. On June 9, 1914 he married Olive Ley Stillman, who survives. Two children were born to them. Their daughter Frances Ann Stillman died February 27, 1936, at age 15, unmarried and without issue. Their daughter Ruth Stillman Hare is married and survives. She has three children, namely Margaret Hare, an adult, Ralph S. Hare, 19 years of age, and Luise H. Hare, 13 years of age. Frank William Stillman was born in 1892 and died on May 31, 1957. On September 5, 1917, he married Emily Leeds Stillman who survives. No child was born to them. On November 9, 1934, they adopted Margaret Burr Stillman, aged 8, and Elizabeth Jane Stillman, aged 5. Margaret Burr Stillman is married and her surname is O'Neill. Both adopted children survive and are adults.

Testatrix made a number of specific bequests of personalty and gave specified sums of money to named persons and institutions. She also specifically devised four tracts of real property. To her son Frank she gave a farm in Woodbridge on which he then lived. To her son Ralph she gave designated land and buildings in Rahway. She placed in trust for the

use of her daughter Ruth "all my real property, lands and buildings" at Woodmont, Connecticut, and the furniture and furnishings and effects therein, and also "my residence property, lands and buildings known as 'Elmwood' No. 115 Elm Avenue, Rahway, New Jersey, in trust to permit my said daughter Ruth E. Stillman to use and occupy the same during her lifetime." Upon the death of the daughter the real property placed in trust is to be divided between the two sons in fee, with provisions for representation hereinafter quoted with respect to "Elmwood."

The residue of her estate testatrix gave to her executors in trust for the following uses:

"TENTH:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

To pay over, transfer, assign and deliver one-half of my said residuary estate in equal shares to my two sons Ralph G. Stillman and Frank W. Stillman, or if my said daughter Ruth E. Stillman does not survive me to pay over, transfer, assign and deliver my entire residuary estate in equal shares to my two sons Ralph G. Stillman and Frank W. Stillman. If either of my said sons is or if both, of them are dead at the time of my death having issue living at my death, such issue shall take per stirpes and not per capita the share of my residuary estate its or their parent would have taken under this paragraph of my will had such parent survived me; if either of my said sons predeceases me and has no issue living at my death the share which such deceased son would have taken had he survived me shall be paid over, transferred, assigned and delivered to the other of my said two sons, or if he is also dead having issue living at my death to such issue per stirpes and not per capita.

If my said daughter Ruth E. Stillman survives me to hold in trust for her the other one-half of my said residuary estate and to pay the net income thereon to her during her lifetime.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

At the death of my said daughter Ruth E. Stillman the principal of the trust fund or the remainder thereof, with any income in hand and accrued income, shall be paid over, transferred, assigned and delivered in equal shares to my two sons Ralph G. Stillman and Frank W. Stillman, or if either of them is or if both of them are then dead having issue then living to his or their issue per stirpes and not per capita, or if either of them has no issue then living the same shall be paid over, transferred, assigned and delivered to the other of my said two sons or if the other of my said two sons is also dead having issue then living to his issue per stirpes and not per capita."

Commercial Trust Company of New Jersey and Ralph G. Stillman were named executors and trustees and qualified. Since the death of Ralph the Trust Company has continued as sole surviving executor and trustee. The accounts of the trustee are in order and the allowances prayed for are proper. The instructions sought concern paragraph Ninth of the will, relevant portions of which read as follows:

"NINTH: If my said daughter Ruth E. Stillman survives me I give, devise and bequeath to my executors hereinafter named my residence property, lands and buildings known as 'Elmwood' No. 115 Elm Avenue, Rahway, New Jersey, in trust to permit my said daughter Ruth E. Stillman to use and occupy the same during her lifetime.

If at any time or from time to time during my said daughter's lifetime she desires to have the said lands and buildings or any part thereof sold, I order and direct my trustees to sell and convey the same with the written consent of my said daughter to be expressed by her executing and delivering an appropriate instrument to evidence such consent. In case of such sale or sales I order and direct that one-half of the proceeds of sale shall be added to the trust fund hereinafter created for my said daughter under paragraph 'Tenth' of this will to be held and disposed of as part thereof, and I give and bequeath the other one-half of said proceeds of sale equally to my two sons Ralph G. Stillman and Frank W. Stillman, or if either of them is or if both of them are dead at the time of any such sale his or their issue shall take its or their parent's share thereof per stirpes and not per capita or if either of them is dead at the time of any such sale having no issue then living, the share which such deceased son would have taken shall go to my other son or if the other of my said sons is also then dead having issue then living to his issue per stirpes and not per capita. If at the time of any such sale both of my said sons are dead and neither of them has issue then living the entire proceeds of sale shall be added to the trust fund hereinafter created for my said daughter Ruth E. Stillman under paragraph 'Tenth' hereof and shall be held and disposed of as part of said trust fund.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

If said lands and buildings comprising the trust property known as 'Elmwood' aforesaid are not sold during my said daughter's lifetime then at my said daughter's death or at my death if my said daughter predeceases me, I give and devise the same in equal shares to my two sons Ralph G. Stillman and Frank W. Stillman to have and to hold the same to them, their heirs and assigns forever, and I order and direct my trustees to execute and deliver appropriate instrument or instruments to so transfer the same. If either of my said sons is not then living or if both my said sons are not then living, I order and direct my trustees to sell the said lands and buildings known as 'Elm-

wood' aforesaid and I give and bequeath the proceeds of sale in equal shares to my surviving son and to the issue per stirpes and not per capita of such deceased son, or if both my said sons are dead to their issue per stirpes and not per capita or if either of them has no issue then living I give and bequeath the same to my other son or if the other of my said sons is also dead to his issue per stirpes and not per capita."

On August 13, 1959 a portion of the "Elmwood" property was sold. It yielded $31,940.68, of which $16,500 was represented by a purchase money mortgage. The trustee has paid one-half of the proceeds into the trust for the use of Ruth E. Stillman, and has paid one-quarter of the proceeds to Ruth Stillman Hare, surviving daughter of Ralph G. Stillman. The remaining one-quarter, which, with interest, now amounts to $9,400, it has held in reserve pending a determination as to who is entitled to receive the same under the provisions of the above-quoted paragraph Ninth of the will.

If there are surviving issue of Frank W. Stillman, they are entitled to receive this fund. As above stated, he had no children born to him but adopted two daughters who survive. They are Margaret Burr Stillman O'Neill and Elizabeth Jane Stillman. If the adopted children are "issue" within the meaning of the will, they are entitled to share the fund equally. If the adopted children are not "issue" of Frank W. Stillman, then the fund must go to Ruth Stillman Hare, the only surviving child of Ralph G. Stillman.

The trustee has presented the authorities on both sides of the question but concludes that the adopted children of Frank W. Stillman do constitute his issue and are entitled to the fund. The same view is presented by counsel for Elizabeth Jane Stillman, one of the adopted daughters, and by Edward W. McGrath, Esquire, guardian *ad litem* for any as yet unborn or unascertained issue of the two adopted daughters. Mrs. Hare, whose interests are opposed, although notified, is not represented. The only argument against inheritance by the adopted daughters of Frank is presented on behalf of two minor children of Mrs. Hare by their guardian *ad litem,* Cud-

die E. Davidson, Jr., Esquire. The persons represented by guardians *ad litem* have no present interest in the fund. However, they may hereafter have an interest in the balance of the Rahway property. Also, the language of paragraph Tenth of the will disposing of the remainder of the trust upon the death of the life tenant is substantially the same as that used in paragraph Ninth. The determination in the present proceeding may constitute an adjudication or may affect rights which may hereafter accrue to the great grandchildren of the testatrix. It is therefore desirable and proper that they be heard on the present issue.

No oral evidence has been offered. Counsel advise that Miss Ruth E. Stillman is so far advanced in age that it is inadvisable to take her testimony. Through her attorney (not involved in this litigation) she sent word to counsel that her mother had favored the adoption of the children by Frank. Since the adoption occurred three years after the death of the testator, it is impossible to weigh the significance of her message.

The scrivener of the will is either unknown or his identity has not been disclosed. Therefore there is nothing before the court except the face of the will and the family tree. No special circumstances outside of the will have been shown.

The question presented is whether the adopted children of Frank are his surviving issue within the meaning and intent of the will under consideration. The subject has been fully discussed in *In re Wehrhane's Estate*, 23 *N. J.* 205 (1957), and *In re Coe's Estate*, 42 *N. J.* 485 (1964).

In *Wehrhane* it was held that a bequest in a 1925 will to "issue per stirpes" of the testatrix's daughter did not go to the daughter's adopted son.

The latest expression of the Supreme Court is found in *Coe* It was there held that the adopted children of the testatrix's foster daughter (not legally adopted), took a bequest to the daughter's "lawful children." Chief Justice Weintraub said for the Supreme Court:

"As already noted, *Wehrhane* involved 'issue per stirpes' and not 'children.' We have disapproved *Wehrhane's dictum* that 'children' presumptively means only natural children in the will of one other than an adopting parent. Our basic approach of course implicates the soundness of *Wehrhane* with respect to 'issue' or 'issue per stirpes' and the question is whether we should decide now whether *Wehrhane* can stand even as to its actual holding.

※     ※     ※     ※     ※     ※     ※

Frankly we would not, as an original matter, distinguish among issue, descendants, children, and heirs, since ordinarily the word is not selected by the testator but rather by the scrivener, who, if he were conscious of the question whether adopted children should be in or out, would elicit the testator's wish and express it unequivocally. The cases at most attributed but *prima facie* meaning to such words, and a competent draftsman would not deliberately pick a word which instead of controlling the context is easily colored by it. The caveat against that course has been unmistakable. Annotation, 86 *A. L. R.* 2d 12, 19 (1962).

But the immediate question is whether an equity might be shown in some circumstances with respect to the word 'issue' in light of our prior cases and perhaps also in light of the fact that *L.* 1953, *c.* 264 which we just quoted overturned the judicial view of issue prospectively only. As to the effect of prospective legislation upon the judiciary's responsibility for pre-existing situations, see *In re Arens* [*Trust*], 41 *N. J.* 364, 384–387 (1964). We think the sound course is to leave the question open so that the possible equities may be weighed in a specific setting.

In summary, then, we will not extend *Wehrhane* and if that case is to be followed at all, it will be confined to its precise holding." (42 *N. J.*, at *pp.* 493, 494–495)

It should be emphasized that neither in *Wehrhane* nor in *Coe* did the court hold that the use of the word "issue" is dispositive. The *Wehrhane* court said it created a "presumption." In *Coe* the word was said to have a *"prima facie"* meaning. As here used both expressions mean no more than an inference from the use of the word and an arbitrary rule to decide cases in which factual determination of intent is impossible. As Vice-Chancellor Buchanan said in *Haver v. Herder*, 96 *N. J. Eq.* 554 (*Ch.* 1924):

"The available evidence, to my mind, leaves the testator's intent in this behalf entirely uncertain, and necessitates (since the question must be determined one way or another, in order that the case may be decided) the adoption of a rule of construction. ※ ※ ※" (at *p.* 558)

If the presumption or inference from the use of the word "issue" is that adopted children are included, there is nothing in this will to contradict that. On the other hand, if the presumption is against such inclusion, there is some indication here to the contrary.

The will provides that upon the death of the life tenant before the testatrix, or thereafter before the sale of the property, "I give and devise the same in equal shares to my two sons Ralph G. Stillman and Frank W. Stillman to have and to hold the same to them, their heirs and assigns forever, and I order and direct my trustees to execute and deliver appropriate instrument or instruments to so transfer the same." The gift over of the proceeds of the sale of the real property to the issue of a son *per stirpes* follows, if a son dies before that time.

So also as to the disposition of the proceeds on sale of the land during the lifetime of the life tenant, one-half of the proceeds is to go equally to the sons "or if either of them is or if both of them are dead at the time of any such sale his or their issue shall take its or their parent's share thereof per stirpes * * *." The use of the word "parent" indicates that the word "issue" was intended to refer to the son's child or children while also covering later generations in the event that only a third or fourth generation should then survive. Decedent's daughter had not married and was apparently not expected to. The basic plan was an absolute gift of the remainder to the sons and their heirs. The same result was sought to be accomplished if the sons died before taking.

In 1929, when this will was drawn and executed, the statutory provision governing the descent of real property in the case of intestacy was contained in 2 *C. S.*, *p.* 1917, § 1, (later *R. S.* 3:3-2 and now *N. J. S.* 3A:4-2 and 3A:4-4) and read in part as follows:

"That when any person shall die seized of any lands, tenements or hereditaments, in his or her own right in fee-simple without devising the same in due form of law, leaving two or more lawful children, such lands, tenements or hereditaments shall descend to, and be equally

inherited by, all the lawful children of such person so seized, as tenants in common, and in equal parts, without regard to sex; provided always, that if any child of the person so dying seized, shall have died before his said ancestor, leaving lawful issue, the share or part of the said lands, tenements or hereditaments, which such child so dying would have been entitled to, under and by virtue of this act, if such child had survived the person so dying seized, shall descend to and be inherited by such issue, in the manner and in equal parts as before mentioned; and the same law of inheritance and descent shall be observed in case of the death of the grandchildren and other descendants, to the remotest degree; * * *."

Section 22 of the Wills Act, 4 *C. S.*, *p*. 5866 (later *R. S.* 3:2–18 and now *N. J. S.* 3A:3–13), provided:

"*Lapse of devises, etc.; death of devisee or legatee leaving issue not to cause lapse unless so directed.* — That whenever any estate of any kind shall or may be devised or bequeathed by the testament and last will of any testator or testatrix, to any person being a child or other descendant of such testator or testatrix, or being a brother or sister or any descendant of a brother or sister of such testator or testatrix, and such devisee or legatee shall, during the life of such testator or testatrix, die testate or intestate, leaving a child or children, or one or more descendants of a child or children who shall survive such testator or testatrix, in that case such devise or legacy to such person so situated as above mentioned, and dying in the lifetime of the testator or testatrix shall not lapse, but the estate so devised or bequeathed shall vest in such child or children, descendant or descendants of such legatee or devisee, in the same manner as if such legatee or devisee had survived the testator or testatrix and had died intestate; but this provision shall not apply where the testator or testatrix shall, by the will or codicil thereto, or other instrument, have otherwise directed in regard to the children or descendants of the said devisee or legatee dying as aforesaid. (Rev. 1877, *p*. 1246, as amended *P. L.* 1887, *p*. 63.)"

At that time, the statute providing the effect of adoption was contained in section 97–16 of the 1924 *Cum. Suppl.* to the *Compiled Statutes; L.* 1912, *c.* 28, *p.* 53. The language, in the respects in which we are here concerned with it, was substantially the same as in *R. S.* 9:3–9 quoted in *Coe*.

*In re Book's Will*, 90 *N. J. Eq.* 549 (*E. & A.* 1919), held:

"The effect of the legislation just adverted to is to clothe the adopted child with all the rights of a natural child so far as inheritance of real estate or the distribution of personal estate is concerned. It makes

such child the lawful child of the adopting parent in these respects. It changes the statutory rules regulating the devolution of property, not by amending or repealing *pro tanto*, the provisions of pertinent legislative enactments, but by enlarging the class for whose benefit they were originally passed (that is, the children born to the decedent, and their issue), by making the adopted child a lawful child of the decedent for the purpose of sharing in the distribution of his estate.

The act concerning wills, the statute of descents, and the statute of distribution composed the entire legislative system regulating the transmission of the estates of decedents, testate or intestate, prior to the passage of the act for the adoption of minor children. By the enactment of this latter statute that system, as we have just said, was, to some extent, changed. To determine the purpose of the Legislature in making that change, and the extent thereof, all of these statutes must be read together; for it is a universally recognized rule of statutory construction that where there are different statutes *in pari materia*, though made at different times, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. *Sedg. Stat. Construct. (2d Ed.), p.* 211; *Amer. & Eng. Ency. (2d Ed.), vol.* 26, *p.* 620, and cases cited; *White v. Hunt,* 6 *N. J. Law* [415], 417; *Koch v. Vanderhoof,* 49 *N. J. Law* [619], 621; *Gartner v. Cohen,* 51 *N. J. Law* [125], 127. Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the statute of distributions had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned—to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those born of his body. *To give this legislative purpose its full significance, the meaning of the words 'child,' 'children,' and 'issue,' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope."* (at *pp.* 552–553; emphasis supplied)

Up to the time when this will was drawn in 1929 only five cases had been decided touching upon the right of an adopted child to take property by descent or by will (see listing in *In re Fisler,* 131 *N. J. Eq.* 310, at *pp.* 320–321 *(Prerog.* 1942)).

*Stout v. Cook,* 77 *N. J. Eq.* 153 *(Ch.* 1910), reversed on other grounds at 79 *N. J. Eq.* 573 *(E. & A.* 1911), held that a will executed in 1861 directing that the "child or children" of a deceased child of the testator take the parent's share, did

not contemplate a subsequently adopted child since there was no adoption law in this State or in New York at the time when the will was made and when the testator died.

*In re Book's Will,* above cited and quoted, was decided in 1919 and held that one who had an adopted child when he made his will had "issue living" within the meaning of section 20 of the Wills Act (*C. S., p.* 5865, later *R. S.* 3:2–15 and now *N. J. S.* 3A:3–10).

*In re Alter's Will,* 92 *N. J. Eq.* 415 (*Prerog.* 1921), held that the adoption of a child by a testator who had made a will prior thereto when she had no issue, voided the will under the same section 20 of the Wills Act referred to in *Book, supra.*

In *Haver v. Herder,* 96 *N. J. Eq.* 554 (*Ch.* 1924), Vice-Chancellor Buchanan held that an adopted child was a "legal heir" of his adopting parent under the will of the grandparent. The vice-chancellor expressly reserved as to a will using the word " 'issue,' because that might, perhaps, fairly be taken to mean 'heirs of the body,' under the express exception provided by the statute, * * *."

The fifth case referring to the subject was *Ahlemeyer v. Miller,* 102 *N. J. L.* 54 (*Sup. Ct.* 1925), affirmed 103 *N. J. L.* 617 (*E. & A.* 1927). That case held that "child or children" of a grantee in a deed did not include a later adopted child. Noting the decisions in *Book, Alter* and *Haver,* Justice Minturn expressly held *Book* to be binding authority as to wills, but further held that a rule applicable to wills did not govern the construction of a covenant of a deed of conveyance.

All of the other cases dealing with the subject came after 1929, the earliest being *Dulfon v. Keasbey,* 111 *N. J. Eq.* 223 (*Ch.* 1932).

Thus, when the present testator's will was drawn and executed, the only case in the Court of Errors and Appeals construing the word "issue" in connection with inheritance under a will and under the law of New Jersey was *In re Book's Will, supra.* No case had held *contra.* The strong opinion by Chief Justice Gummere left little doubt that

adopted children constituted "issue" of their parents in the language of the law of this State in connection with inheritance. The caveat in *Haver* was prefixed by the word "perhaps," and the ruling in *Ahlemeyer* expressly accepted *Book* as correct for wills.

If the scrivener of Mrs. Stillman's will had given consideration to possible adoption and had made a careful study of the New Jersey cases before drawing this will, he would have been justified in concluding that in connection with wills as well as intestacy, "issue" included grandchildren and great grandchildren *ad infinitum* by adoption. The contrary opinion of Vice-Chancellor Backes in *Dulfon* came three years later, after Mrs. Stillman's death. Wehrhane was far in the future.

There was no reason to conclude in 1929 that the word "issue" in the Descent Act and in the Wills Act meant one thing and in a will meant another.

In 5 *N. J. Practice (Clapp, Wills and Administration)* (*3d ed.* 1962), § 213, *p.* 366, it is said:

"Where a testator manifestly intends to refer to the New Jersey Statute of Descent and Distribution, a gift by him to 'children' or to others taking under the statute includes adopted children; for under that statute, adopted children are placed on the same footing as natural children. * * *"

It is highly probable that Mrs. Stillman did not discuss with her attorney a prospective adoption by her son or sons, and that the scrivener did not give special consideration to that possibility but sought to use a single comprehensive word to indicate those who would inherit real property from the sons in case of intestacy, the same persons who would inherit if a son took the real property under the will and died intestate (except that under the will they were to take *per stirpes* and not *per capita*).

The manifested intention of paragraph Ninth of the will, then, was to leave the remainder of the property in question or its proceeds to the testatrix's sons if they survived; other-

wise to their surviving natural or adopted children or grand-children or great grandchildren in any degree, *per stirpes*.

It is therefore determined that Margaret Burr Stillman O'Neill and Elizabeth Jane Stillman, the adopted daughters of Frank W. Stillman, are his surviving issue within the meaning of paragraph Ninth of the will. The trustee will be instructed to pay over to them in equal shares, one-quarter of the proceeds of the sale of any portion of "Elmwood" sold as provided in said paragraph and all accretions thereto.

The account and supplement will be allowed as reported. The commissions and counsel fees prayed for will be allowed.

A form of judgment incorporating the determination and instructions herein contained should be submitted in compliance with *R. R.* 4:55–1.