98 N.J. Super. 208 (1967)
236 A.2d 616
IN THE MATTER OF THE ESTATE OF WILLIAM F. CORY, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided December 8, 1967.
*210 Mr. Edward J. Brown and Mr. Peter F. Eld for plaintiff (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Colemar F. Nichols for defendant Helen Denny (Messrs. Clapp & Eisenberg, attorneys).
Mr. William L. Dill, Jr. and Mr. Barry A. Osmun for defendants Marjorie C. Jervis, Barbara J. Buchanan, Berwyn J. Binkley, Ogden W. Jervis and Winston H. Jervis (Messrs. Stryker, Tams & Dill, attorneys).
Mr. Maurice Wagner of the Florida Bar and Mr. Philip Jacobowitz for defendant Cory N. Jervis.
MINTZ, J.S.C.
Plaintiff Fidelity Union Trust Company, surviving trustee under the will of the late William F. Cory (testator), seeks allowance of its final account and instructions respecting distribution of the corpus. At oral hearing the account was allowed and various instructions given. There remains for determination the question whether Cory N. Jervis (adoptee), the adopted child of testator's daughter Helen N. Jervis, is entitled to share in the corpus distribution under paragraph Fifth of testator's will.
Testator died January 24, 1929, survived by two daughters, Madalon Denny and Helen N. Jervis. In paragraph Fifth of the will he disposed of the residue of his estate and provided for life estates in the form of income annuities to his two daughters. Each life tenant was to receive $500 each quarter year if she had a husband living and $900 each quarter year if she did not. Each daughter was to receive an additional $50 each quarter year for each minor child under 15, and an additional $100 each quarter year for each minor child between 15 and 21 years of age. The testator further provided therein that if any grandchild attends a college, university or technical school, the trustees may in their discretion pay the expenses of such course of education or contribute towards the same from the net income *211 of the residuary estate. The testator further declared in said paragraph that:
"From and after the decease of my said daughters Madalon Denny and Helen Neville Jervis and their respective husbands Robert C. Denny and Victor R. Jervis (all four of them being deceased), I give, devise and bequeath my said residuary estate, * * * in equal shares to the children then living of both my said daughters, * * *."
Madalon Denny died June 19, 1946. Helen N. Jervis died November 9, 1966. Their respective husbands are deceased, so the time for corpus distribution has arrived, except for the sum of $12,000 to be retained to provide income payments for life to a nephew, Frank B. Cory. The corpus now available for distribution will exceed $900,000.
Madalon Denny left one child, defendant Helen Denny. Helen N. Jervis is survived by five natural born children, Marjorie C. Jervis, Barbara J. Buchanan, Berwyn J. Binkley, Ogden W. Jervis and Winston H. Jervis, all defendants in this action. Testator executed his will on May 10, 1926. Shortly before that date Helen N. Jervis, to the knowledge of testator, brought a foster child into her home with the intention of legally adopting him. On December 31, 1929, approximately 11 months after testator's death, Helen and her husband Victor Jervis formally adopted Cory N. (nee Grady) Jervis, a party defendant herein, by order of the Duval County Circuit Court, Florida. The adoption order provided that the effect of the adoption as to "inheritance and all other legal incidents and consequences shall be the same as if he had been to [the Jervises] in lawful wedlock born."
As stated, testator died January 24, 1929. During the early years of the trust's administration the quarter-annual payments called for in paragraph Fifth were made by the trustees to the daughters Madalon Denny and Helen N. Jervis, but no payments were made to Mrs. Jervis on account of her adopted child. At Mrs. Jervis' urging, John C. Cory and Fidelity Union Trust Company, as surviving *212 trustees, instituted an action on April 26, 1939 in the former Court of Chancery of New Jersey for construction of the said will and certain instructions. The trustees' complaint asked the court to:
"* * * construe the will of William F. Cory, deceased, and declare the rights of the parties thereunder and advise the complainant trustees, (a) whether Helen Neville Jervis is entitled to an additional payment each quarter year out of net income for and on account of Cory N. Jervis, her adopted son, to the same extent as if he were her own issue; (b) whether Cory N. Jervis is a remainderman under said will, being included in the class designated by testator as the children of his daughter, Helen Neville Jervis; and (c) whether Cory N. Jervis is included in the class designated by testator as his grandchildren so as to entitle said Cory N. Jervis to share in the benefits conferred upon that class by said will [educational expenses]."
Helen N. Jervis, Cory N. Jervis and other interested persons were joined as defendants in the action. William F. Delaney, a member of the New Jersey bar, appeared as solicitor for Helen N. Jervis and as guardian ad litem pro se for Cory N. Jervis, who was then 13 years of age. The guardian ad litem filed an answer for the adoptee and in general actively participated in the litigation in his behalf.
The late Vice-Chancellor Berry rendered a written opinion in which he decided the testator had not intended the adoptee to take under his will. The Chancellor's final decree of February 13, 1940 determined that Helen N. Jervis was not entitled to additional quarter-annual payments out of net income from the residuary estate on behalf of Cory, and that Cory was not a remainderman under the will, i.e. not included in the class designated by testator as the "children" of his daughter Helen N. Jervis. No appeal was taken from that decree.
Now that Helen N. Jervis, the last life tenant, has died, the corpus is presently distributable. The surviving trustee seeks instructions as to the adoptee's rights to take as a remainderman under William F. Cory's testamentary trust. This request is made in light of In re Coe, 42 N.J. *213 485 (1964). The court there held that an adopted child is presumptively included within a testamentary provision for the "child or children" of a designated person unless the testator indicates a contrary intent. Coe expressly rejected earlier decisional law which held that there was a presumptive exclusion against later adopted children in wills executed by "strangers to the adoption." The rule enunciated in Coe is applicable whether the adoption of the child took place in New Jersey or in another state. Munson v. Johnston, 16 N.J. 31, 34 (1954).
The natural born remaindermen argue that the 1940 Chancery decree is res judicata or, in the alternative, constitutes a collateral estoppel on the issue of testator's intent to benefit the adopted child under paragraph Fifth of said will.
The adoptee argues that for a variety of grounds, primarily prematurity of Vice-Chancellor Berry's decision as to future corpus distribution and the minority of Cory at that time, relief should be granted from the 1940 Chancery decree and instructions fashioned in accordance with Coe.
The bill of complaint and the decree in the 1939-1940 Chancery proceeding, as already noted, dealt with Cory N. Jervis' future rights as a remainderman, although the immediate issues were his mother's rights to receive additional income payments on his account.
The courts have made various pronouncements respecting prematurity. In Ogden v. McLane, 73 N.J. Eq. 159 (Ch. 1907), it was declared that:
"* * * This court will not instruct trustees in regard to their duty with respect to the payment or transfer of the trust estate in their hands until the time for such payment and transfer has arrived. * * *" (at p. 161)
Similarly, in Kellogg v. Burnett, 74 N.J. Eq. 304, 309 (Ch. 1908), the court held that it cannot "be induced to give counsel and advice to the parties" about corpus distribution *214 until the time for such distribution arrives  in the instant case at the death of the life tenant.
A less restrictive view was taken in In re Hosford, 26 N.J. Super. 412, 421 (App. Div. 1953). The court there said that ripeness of a controversy for judicial decision is largely a matter of discretion, but that the "greatest strictness" is observable in scrutinizing a court's jurisdiction to make binding declaratory judgments on future rights. Cory N. Jervis' controverted remainderman status in 1939-1940 was just such a future right. The adoptee argues that due to his minority, the Court of Chancery should not have determined his future rights in the corpus.
Persuasive arguments, however, can be argued by those asserting res judicata as a defense. One may contend that a ruling on the adoptee's exclusion or inclusion in the class of "children" of testator's daughters in the income payments dispute conclusively disposes of the adoptee's membership in the same class for corpus distribution purposes. If Mrs. Jervis was not entitled to any income payments on account of Cory because he was not her natural-born child, it necessarily follows that Cory would not in the future be entitled to any corpus distribution. Therefore, a decision encompassing a disposition of the adoptee's right to corpus would fall within the court's discretionary ambit.
An aspect of this discretion was elaborated by the court in Schumacher v. Howard Savings Inst., 128 N.J. Eq. 56 (Ch. 1940), affirmed 131 N.J. Eq. 211 (E. & A. 1941):
"* * * `The action of the court should be confined to instructions [of trustees] as to present duty or as to the duty likely to arise under present conditions.'" (at p. 63)
The 1940 decree did not purport to fix the future size of all remainder interests, which still could be altered by deaths and births. It dealt, instead, with the adoptee's alleged corpus rights, which, if found to exist, would have been vested subject to divestment by death. This issue, because of its vested nature, could be said to have been as *215 ripe for instruction in 1939 as in 1967. Thus it may be argued that the Chancery decree properly determined a situation likely to arise under present conditions, and is binding upon the adoptee.
The adoptee relies heavily on In re Hosford, supra, as authority for the proposition that his minority during the 1939-1940 proceeding should bar the decree's effect as res judicata or a collateral estoppel. In that case the court granted equitable relief from a judgment which had disposed of future rights of an infant. The court there stated that:
"* * * The most thorough opinions on the subject [instruction of trustees on future distribution of the trust estate] agree that future rights will be the subject of a decree only `where all the parties who in any event will be entitled to the property are of age and are ready to argue the cause.'" (26 N.J. Super., at p. 420; emphasis supplied)
As already observed, Cory was represented by a solicitor appointed as his guardian ad litem, who filed an answer and actively appeared in the case. Nevertheless, he was a minor at the time and in light of In re Hosford it may be argued that this fact itself is sufficient to relieve him from the 1940 decree. On the other hand, it may be contended that Hosford is clearly distinguishable from the instant situation. In Hosford, the notice of the action gave the infant no inkling that his remainder interest would be adjudicated. The clerk of the court represented the infant as his guardian ad litem and filed no answer in his behalf. As the court in Hosford observed, at p. 423, the orphaned infant there "had no reasonable opportunity to present his claim" and "was a helpless infant, represented so poorly that his case was not presented at all * * *."
Assuming, arguendo, that the 1940 decree is res judicata on the issue now presented, the adoptee may still prevail if under R.R. 4:62-2(f) he is entitled to relief from said decree. R.R. 4:62-2(f) provides that:
*216 "On motion, with briefs, and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for * * * (f) any other reason justifying relief from the operation of the judgment or order."
Motions under it shall be made within a reasonable time and are addressed to the sound discretion of the trial court.
"* * * [T]he very essence of [subsection] (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966).
See also Hodgson v. Applegate, 31 N.J. 29 (1959), and In re Manfredini, 24 N.J. Super. 59 (App. Div. 1952).
Although a supervening change of decisional law such as In re Coe has been held not to be "new matter" justifying relief under what is now R.R. 4:62-2(b) (newly discovered evidence), Miller v. McCutcheon, 117 N.J. Eq. 123 (E. & A. 1934), if the change is coupled with considerable equity and extreme hardship for the applicant, grounds for relief from a judgment under R.R. 4:62-2(f) can be established. Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 125 (App. Div. 1962), certification denied 40 N.J. 508 (1963). Such a case would constitute an "exceptional situation" envisioned by R.R. 4:62-2(f).
In re O'Mara, 106 N.J. Eq. 311 (Prerog. 1930), considers the equities involved where relief was sought from a judgment because of a subsequent change in the law. There the Orphans Court entered a decree of distribution in an estate in accordance with a line of statutory construction that first cousins were to take as next of kin, to the exclusion of children of predeceased first cousins. The decree was appealed to the Prerogative Court, but it was dismissed and the Orphans Court decree affirmed. In re O'Mara, 101 N.J. Eq. 713 (Prerog. 1927). After the time for a higher appeal had expired, but while the O'Mara estate remained undistributed, the Court of Errors and Appeals decided a case pertaining to the same question of *217 statutory construction, In re Miller, 103 N.J. Eq. 86 (Prerog. 1928), affirmed 104 N.J. Eq. 491 (E. & A. 1929), and rejected the established line of authority. Although the time for rehearing or to file a bill of review had expired, the application of petitioners for relief from the 1927 decree was granted by Ordinary Walker. The polestar of his opinion was the undistributed status of the estate. He wrote:
"* * * And, assuming that an appeal could not now be reinstated * * *, nevertheless, where a fund remains in the hands of an administrator undistributed, and the construction of a statute as to its distribution by the court of last resort in this state changes the law as directed by the orphans' court and the prerogative court on appeal herein, and whose decisions differ from that of the court of last resort, it would be intolerable to permit a distribution in accordance with the orphans' court and prerogative court where, as stated, the court of last resort has construed the statute differently, * * *." In re O'Mara, 106 N.J. Eq., at pp. 316, 317.
Further, Ordinary Walker stated:
"* * * it would be highly inequitable to make distribution of this estate not in accordance with the law of the land as laid down in the opinion In re Miller's Estate * * *." (at p. 316)
Similarly, in the case at bar a trust is before this court for instructions and allowance of the trustee's final accounting prior to a distribution of corpus. Also, since the 1940 adjudication of the adoptee's rights, Dulfon v. Keasbey, 111 N.J. Eq. 223 (Ch. 1932), the decisional law upon which Vice-Chancellor Berry relied, has been overturned.
In Miller v. McCutcheon, supra, the court disapproved of the ultimate conclusion reached in O'Mara. Ordinary Walker, after emphasizing the O'Mara fund's undistributed state and the court's capability to distribute it in accordance with the current law, eventually grounded his decision on the proposition that an overturning of prior law is "new matter." As such it should be treated as the equivalent of the "discovery of new evidence which could not with diligence *218 have been discovered within the time limited for an appeal * * *," O'Mara, supra, at p. 317, and thus afford a ground for relief from a judgment.
Miller v. McCutcheon, supra, deals with a taxpayer, who having disputed a statutory assessment and lost in a prior action (115 N.J. Eq. 459 (Prerog. 1934), sued for a refund after a like statute had been declared unconstitutional by the United States Supreme Court. Miller expressly disapproved of that portion of O'Mara which held that a change of law, per se, as new matter is the equivalent of newly discovered evidence. Yet the case leaves much of O'Mara standing. Significantly, in Miller, unlike O'Mara, no undistributed fund was available, and the former court said:
"In the opinion of the ordinary in the O'Mara Case, in which the rehearing was granted (106 N.J. Eq. 311), in addition to holding that a subsequent change in the stated law by decision is new matter the learned opinion writer pointedly remarks at page 316: `The matter here is equitable in its nature, as it would be highly inequitable to make a distribution of an estate not in accordance with the law of the land, * * *.' Be that as it may, that element is absent from this case, the Vice Ordinary holding that the petitioner had no other equitable ground for relief except the presentation of new matter." (Emphasis supplied)
It is noteworthy that the court in Miller recognized that sufficient equities may dictate relief from a judgment. Such an inherent power of the court to vacate a judgment to achieve justice and equity in certain given circumstances (La Bell v. Quasdorf, 116 N.J.L. 368, 372 (Sup. Ct. 1936)) is codified in subsection (f) of R.R. 4:62-2.
In examining the equities in the instant case, the court stresses the existence of the undistributed corpus and the inherent inequity in ordering a distribution not in accordance with the present decisional law as set forth in Coe. Account must also be taken of the adoptee's minority in 1940 and the debatable disposition by the Chancery decree of his future rights as a remainderman.
*219 The adoptee's failure to appeal the 1940 Chancery decree should not be held against him in a balancing of the equities. The strength of the "stranger to the adoption" doctrine at that time would seem to have precluded a successful appeal. Dulfon v. Keasbey, supra.
Unlike the plaintiff in Doyle v. Chase Manhattan, supra, Cory N. Jervis is not guilty of laches because the time is now ripe for an adjudication of how the principal is to be divided. Thus, the equities dictate that the adoptee be relieved from that part of the 1940 Chancery decree excluding his right to participate in the corpus distribution.
But the court must yet deal with another aspect of the 1940 Chancery decree. Even if the said decree is not res judicata as to the adoptee's rights to a share of the principal, it is argued that Vice-Chancellor Berry decided as a matter of fact on the income payments issue that testator did not intend for Helen N. Jervis' adopted child to qualify under his will. Hence, Cory would be collaterally estopped from seeking a review of that finding.
The learned vice-chancellor, after extensively reviewing the prior law with emphasis on Dulfon v. Keasbey, supra, stated that:
"In the instant case, there is no room for the legislative scheme; the testator had his own. By the use of the words `child, children, descendant, descendants, grandchildren,' the testator had in mind, and it was his intention at the time his will was executed, that only natural born children were to be included as the objects of his bounty, not children artificially created by law. Dulfon v. Keasbey, supra. The fact that Cory N. Jervis was not adopted until after the execution of the will and after testator's death made the testator a stranger to such adoption and precludes a testamentary intent to include the adopted child as a `child' or `grandchild' under the will." (Emphasis supplied)
The court then assumed that because testator knew of Cory as Helen N. Jervis' foster-child at the time of the execution of his will, if he had intended to have the child take under his trust "he would undoubtedly have said so."
*220 The language of the learned vice-chancellor's holding indicates he reached a conclusion, not by weighing fact inferences and testimony credibility primarily, but by applying the presently rejected rule of Dulfon v. Keasbey, supra. Once the court categorized testator as a "stranger to the adoption," this presumptively "preclude[d]" a testamentary intent to include the adoptee.
The court's reference to the grandfather's acquaintance with the then foster-child is employed to show, possibly without clear legal support (see In re Estate of Stillman, 88 N.J. Super. 168 (Cty. Ct. 1965)), that a will scrivener in 1926 would know it was mandatory to name the adopted child specifically in order for him to take. This fact of acquaintance with the adoptee and failure to mention him specifically seems to have been introduced by the court to buttress the then operative exclusionary presumption, and not to have been independently dispositive as a fact finding on intent.
Therefore, the 1940 opinion of the learned vice-chancellor does not explicitly find the testator's intent as a fact; rather, the operative portion of the opinion essentially relies upon and paraphrases the now discredited "stranger to the adoption" rule, enunciated in Dulfon v. Keasbey, supra. As such, this prior opinion should not be viewed as collaterally estopping this court on the fact issue of testamentary intent.
With relief from the corpus distribution aspects of the 1940 decree granted, the In re Coe inclusionary presumption for "stranger to the adoption" situations applies in the absence of rebutting evidence of a contrary testamentary intent.
Here, as well as in all will construction cases, the probable intent of the testator, as ascertained from the language of the will and attending circumstances, controls. The court will strain towards carrying out testator's probable intent. So far as the situation fairly permits, it will ascribe to him those impulses which are common to human nature *221 and will construe his testament to effectuate those impulses. Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962); In re Cook, 44 N.J. 1 (1965).
The natural-born remaindermen contend that such a rebutting inference can be drawn from testator's above-mentioned knowledge in May 1926 of the presence of the then foster-child, Cory, in his daughter's home, his knowledge of the daughter's intention to adopt the child legally and, finally, his failure specifically to name the child in his testamentary instrument. This argument presupposes a clarity in the law that did not exist when testator executed his will on May 10, 1926. A reasonable scrivener was then not obliged to know that unless a future adoptee were specifically named in a testamentary instrument, a court would refuse to include him as a member of a class of testator's grandchildren. The scholarly dissertation in In re Stillman, supra, at p. 177, on the state of the law prior to the 1932 Dulfon decision reveals its general uncertainty. Indeed, in 1926 a scrivener could possibly have expected the adoptee to be included in the class of grandchildren although not specifically named. See Stout v. Cook, 77 N.J. Eq. 153 (Ch. 1910), reversed on other grounds 79 N.J. Eq. 573 (E. & A. 1911); In re Book, 90 N.J. Eq. 549 (E. & A. 1919); see especially Haver v. Herder, 96 N.J. Eq. 554 (Ch. 1924).
Only the then recent and still to be appealed case, Ahlemeyer v. Miller, 102 N.J.L. 54 (Sup. Ct. 1925), affirmed 103 N.J.L. 617 (E. & A. 1927), definitively held that "child or children" did not include a later adopted child, but that case, though pertaining to a "stranger to the adoption," involved a grantee of a deed, not a devisee. The parallel case for wills, Dulfon, was not decided until 1932. Therefore, such evidence to which I have alluded is not persuasive in rebutting the Coe presumption.
To aid the court's probe of testamentary intention, the trustee offered three letters from its files which were not admitted into evidence at the 1940 proceeding.
*222 The first is a letter written by testator to his granddaughter Berwyn Jervis (Binkley), dated August 24, 1927, 15 months after the execution of his will. The trustee had offered this document into evidence in the earlier Chancery proceeding, but upon objection it was ruled inadmissible under Dulfon v. Keasbey, supra. The letter is now clearly admissible under Rules of Evidence 63 (32) and In re Cook, supra.
In the letter to his granddaughter, then about 12 1/2 years of age, the testator wrote:
"* * * I am now proud to say, I have seven [grandchildren], aged 20 years, down to 18 months."
At that time testator had six natural-born grandchildren plus the then Cory N. Grady who had been born approximately 18 months before. For further evidence of testator's pride and acceptance of the foster-child, note from a later portion of the same letter:
"The photos you sent are very good, Corys was splendid, and the people here think he is a beautiful boy and a credit to his Mother and so do I * * *."
There was also introduced into evidence a letter written by the late Helen N. Jervis to the assistant trust officer of Fidelity Union Trust Company, dated February 14, 1939, in which she urged the bank to institute the 1939 Chancery proceeding. In the course of that letter Mrs. Jervis wrote that "he [testator] stated to my husband that Cory would make the seventh to divide his money among."
Pointing the other way is the letter written by the late John C. Cory, a brother of testator and former co-trustee, to a representative of Fidelity Union Trust Company dated, March 7, 1939. John C. Cory was a remote contingent beneficiary under his brother's will. In that letter he wrote that "At the time my brother's will was made I asked him how he would look on the adopted child as a beneficiary *223 under the will. He replied that he did not consider the child as one entitled to receive benefit not being a blood relation." The letters of John C. Cory and Mrs. Jervis were written ten years after testator's death and almost 13 years after the execution of his will. Assuming the latter two letters to have been properly received in evidence, I am not inclined under the circumstances to attribute any significant probative value to either of them. At best they defeat each other. However, the letter written by testator to his granddaughter significantly indicates that he regarded the adoptee as his seventh grandchild, and is evidential of a testamentary intent so to include him.
The presumption that testator intended to include Cory as a child of his daughter Helen N. Jervis under paragraph Fifth of his will is not rebutted. On the contrary, the evidence justifies such a finding.
Helen N. Jervis executed her last will and testament on September 24, 1962. It was admitted to probate by the Superior Court for Buncombe County, North Carolina. She left her entire estate to Cory, to the exclusion of her natural-born children. She declared in her will that "As an explanation for having left all my estate to him [Cory] I wish to advise that my estate is nominal only and my other children upon my death will inherit from a trust fund set up by my father and will be provided for through my father's estate, in which my adopted son will not participate." Obviously, Mrs. Jervis was properly moved to make this provision for Cory in light of the 1940 Chancery decree.
But this court is of the view that Cory is entitled to participate in the corpus distribution and will grant him equitable relief from that decree so as to permit him to qualify under the paragraph Fifth of the will, as a child of testator's daughter Helen N. Jervis. However, he who seeks equity must do equity. It would be unfair to permit Cory to take under his grandfather's will and still receive all of his mother's estate. Therefore, the relief to Cory is conditioned upon his dividing the proceeds received by *224 him from his mother's estate, amounting to $3,494.41, into six equal shares, one of which he may retain and paying the remaining shares, one each, to his five brothers and sisters, the natural-born children of Helen N. Jervis.
Upon submission to the surviving trustee of proof of compliance with this condition, said surviving trustee is directed to distribute the available corpus into seven equal parts. At the oral hearing counsel for defendant Helen Denny, the only child of testator's daughter Madalon Denny, conceded that the distribution should be per capita and not per stirpes. Accordingly, the trust estate is distributable as follows:
One-seventh thereof to Helen Denny
One-seventh thereof to Marjorie C. Jervis
One-seventh thereof to Barbara J. Buchanan
One-seventh thereof to Berwyn J. Binkley
One-seventh thereof to Ogden W. Jervis
One-seventh thereof to Winston H. Jervis
One-seventh thereof to Cory N. Jervis.